Alisa A. Martin, State Bar No. 224037
alisa@amartinlaw.com
Lindsay C. David, State Bar No. 283267
lcdavid@brennandavid.com
**BRENNAN & DAVID LAW GROUP**
2888 Loker Avenue E., Ste 302
Carlsbad, CA 92010
Telephone: (760) 730-9408
Facsimile: (760)888-3575
lcdavid@brennandavid.com

*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

ALAN MORENO, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

BEACON ROOFING SUPPLY, INC., a Virginia Corporation, and BEACON SALES ACQUISITION, INC., a California Corporation,

Defendants.

Case No. 19-cv-0185-GPC-LL

**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: March 6, 2020
Time: 1:30
Courtroom: 2D (Second Floor
Hon. Gonzalo P. Curiel

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 6, 2020, at 1:30 pm., at the United States District Court for the Southern District Of California, located in Courtroom

2D at the Courthouse located at 221 West Broadway, San Diego, CA 92101, Plaintiff will and hereby does move, before the Honorable Gonzalo P. Curiel, for an order: (a) preliminarily approving the proposed settlement; (b) provisionally certifying the classes and appointing class representatives and class counsel; (c) approving the proposed notice and authorizing its dissemination; and (d) setting dates and procedures for the fairness hearing, including deadlines for class members to object to or request exclusion from the settlement.

This unopposed motion is based on this notice and motion, the supporting memorandum of points and authorities, and the declarations of Alisa A. Martin and Lindsay David all filed concurrently herewith, as well as the pleadings on file in this action, and upon such other matters, evidence, and arguments as may be presented to the Court before or at the hearing on this motion.

Dated: January 24, 2020           AMARTIN LAW, PC
                                  BRENNAN & DAVID LAW GROUP


                                  s/ Lindsay C. David
                                  LINDSAY C .DAVID

TABLE OF CONTENTS

I. INTRODUCTION 1

II. BACKGROUND 2

A. Procedural History 2

B. Beacon's Alleged Wrongdoings 3

C. Discovery 4

D. Mediation and Settlement Negotiations 5

E. Addition of PAGA Claims 5

III. SETTLEMENT TERMS 6

A. Settlement Amount 6

B. Class Representative Incentive Payment 7

C. Attorney's Fees and Costs 8

D. LWDA Distribution Error! Bookmark not defined.

E. Administration Costs 8

F. Individual Class Members' Settlement Shares 8

G. Unclaimed Funds 10

H. Dissemination of Class Notice 10

I. Procedures for Resolving Disputes 11

J. No Claim Form Requirement 11

K. Opt-Out/Request for Exclusion Procedures 12

L. Objection Procedures 12

IV. THE SETTLEMENT PROVIDES ADEQUATE COMPENSATION 13

A. Valuations of The Claim for Settlement 13

1. Unreimbursed Business Expenses 13

2. PAGA Penalties 14

B. Valuation for The Primary Claims Based on Proposed Settlement 16

C. Analysis of Class Members' Average Settlement Shares 16

V. PRELIMINARY APPROVAL IS WARRANTED 17

A. The Law Favors Settlement 17

B. The Preliminary Approval Process 18

C. The Settlement Is in the Range of Possible Approval 19

1. The Settlement Was Achieved at Arm's Length 19

2. Counsel Engaged in Extensive Discovery 20

3. The Settlement Suffers from No Obvious Deficiencies 20

4. The Requested Incentive Payment Is Reasonable 21

5. The Requested Attorneys' Fees and Costs Are Reasonable 22

6. Counsel Are Experienced in Similar Litigation 23

**VI. CONDITIONAL CERTIFICATION IS WARRANTED** 23

**A. The Numerosity Requirement is Satisfied** 24

**B. The Commonality Requirement is Satisfied** 24

**C. The Typicality Requirement is Satisfied** 25

**D. The Adequacy Requirement is Satisfied** 25

**VII. THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS** 26

**VIII. CONCLUSION** 26

## TABLE OF AUTHORITIES

### CASES

*Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008)............................24
*Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1203, 1214, 78 Cal. Rptr. 3d 572 (2008)..........................................................................................20
*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997). ........................24
*Cicairos v. Summit Logistics, Inc.*, 133 Cal.App.4th 949, 960, 962 (2005) ..........6
*Epic Sys. Corp. v. Lewis*, 137 S. Ct. 809 (2017)........................................3, 9, 10
*Finder v. Leprino Foods Co.,* No. 1:13-CV-2059 AWI-BAM, 2015 U.S. Dist. LEXIS 30652, at *1 (E.D. Cal. March 12, 2015) ...........................................19
*Fleming v. Covidien Inc.,* 2011 WL 7563047, at *3-4 (C.D. Cal. Aug. 12, 2011) ..........................................................................................................20
*Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir.1982)................................24
*Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980) ....................29
*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)................................................27
*In re Autozone, Inc. Wage and Hour Litig*., Case No. 3:10-md-021590CRB, 2016 WL 4208200 at **6-7 (N.D. Cal. Aug. 10, 2016) ..........................................19
*In Re HP Laser Printer Litig.,* No. SACV 07-0667 AG (RNBx), 2011 WL 3861703, at *4 (C.D. Cal. Aug 31, 2011)........................................................25
*In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)..........................27
*In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *2-3 (N.D. Cal. Jun. 30, 2007) ..............................................................29
*In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008). ......................23
*In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. 3:07-md-1827 SI, 2011 WL 7575003, at *2 (N.D. Cal. Dec. 27, 2011)........................................................26
*In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Pracs. Litig.,* No. 5:09-md-02015 JF, 2011 WL 1877630, at *7 (N.D. Cal. May 17, 2011)...26
*Jaffe v. Morgan Stanley & Co., Inc.,* No. C-06-3903 TEH, 2008 WL 346417, at *2-3 (N.D. Cal. Feb. 7, 2008).....................................................................29
Labor Code § 201 ..............................................................................................19
*Lierboe v. State Farm Mut. Auto. Ins. Co.,* 350 F.3d 1018, 1022 (9th Cir. 2003) ..........................................................................................................30
*Ling v. P.F. Chang's China Bistro, Inc.,* 245 Cal. App. 4th 1242, 1261 (2016)..19
*Makabi v. Gedalia,* No. BC468146, (L.A. Super. Ct. May 8, 2013)...................20
*Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663 (9th Cir. 2003)..............................27
*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 525 (C.D. Cal. 2004). ..................................................................................................24
*Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983) ............................................................................................................23

*Officers for Justice,* 688 F.3d at 625 .....24
*Parks v. Blue Buffalo Company, LTD, Great Plains Leasing, LLC,* Case No. 3:12-cv-01274 (USDC of Southern District of CA) .....28
*Peabody v. Time Warner Cable, Inc.*, 59 Cal. 4th 662, 670 (2014) .....5, 7
*Rannis v. Recchia,* 380 Fed. Appx. 646, 650-51 (9th Cir. 2010) .....29
*Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).....26
*Serrano v. Bay Bread LLC,* 2016 Cal. Super. LEXIS 8043, *22 (June 29, 2016) .....19
*Singer v. Becton Dickinson and Co.,* 08-cv-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) .....27
*Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36, 138 Cal. Rptr. 3d 130 (2012).....21
*Varela v. Lamps Plus, Inc.*, 701 F. App'x 670, 672 (9th Cir. 2017).....3, 10
*Williams v. MGM-Pathe Comm'n Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).....27
*Young v. Polo Retail, LLC,* No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006).....24

**OTHER AUTHORITIES**

Cal. Lab. Code § 2699(e)(2) .....20
Cal. Lab. Code § 226(e)(1) .....20
IWC Order 7-2001 § 11 .....6
IWC Order 7-2001 § 12 .....7
IWC Order 7-2001 §§ 7(A)(3) and 11 .....7
IWC Wage Order 4-2001 § 3(D) .....5
IWC Wage Order 7-2001 § 3(D) .....7
Cal. Lab. Code § 203 .....19
Cal. Lab. Code § 226.7 .....7, 19
Cal. Lab. Code § 226(e).....19

Alba Conte & Herbert B. Newberg, 2 Newberg on Class Actions, § 11.41(4th ed. 2002) .....25
Manual for Complex Litigation, (Fourth) ("MCL 4th") § 21.632 (2004). .....23
Manual for Complex Litigation, § 30.44 (2nd ed. 1985) .....24
MCL 4th, § 21.632 .....28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Alan Moreno seeks preliminary approval of a non-reversionary, non-claims-made settlement.

As background, Plaintiff sued his employers Beacon Roofing Supply, Inc. and Beacon Sales Acquisition, Inc. (collectively "Beacon") alleging that they failed to reimburse him, and other delivery drivers, for business expenses resulting from the use of their personal cell phones on the job. Beacon denies any wrongdoing but nonetheless wants to resolve all claims on a class-wide basis.

The proposed class is comprised of 351 potential class members defined as "all employees of Beacon Sales Acquisition, Inc. and Beacon Roofing Supply, Inc., who worked in California as a delivery driver, or in another similar driver position, during the Class Period, i.e., January 28, 2015 to April 14, 2019."[1] The release covers this same time period.[2]

As a result of this lawsuit, Beacon changed its business practices on April 15, 2019, so that it is now mandated that all Delivery Drivers are issued company cell phones.[3] The proposed settlement, which covers the liability period through Beacon's change in business practices, provides that Beacon will provide at least $97,500 to the Putative Class Members. Second, the proposed settlement also provides for a settlement of the PAGA claim in the amount of $10,000 ($7,500 of which goes to the LWDA and $2,500 goes to the PAGA Representative Group members and is included in the $97,500 above). Third, the proposed settlement provides for up to $10,000 for administration costs. Fourth, the proposed settlement provides for a Class Representative Service Award up to $10,000. Fifth, the proposed settlement provides for Class Counsel Fees in an amount up to

---

[1] Martin Decl., Ex. 1 (Stipulation of Class Action Settlement), ¶ 7.
[2] Martin Decl., Ex. 1, ¶ 9.
[3] Martin Decl., ¶ 19.

*(Footnote continued)*

$100,000 and reimbursement of costs of up to $5,000.[4] The Gross Settlement Amount is $230,000 and any amounts of requested fees, costs and awards not awarded by the Court will go into the Net Distribution Fund and be distributed to Participating Class Members.

The proposed Joint Stipulation of Settlement ("Joint Stipulation" or "Settlement") is fair, adequate, and reasonable, and in the class' best interest because, among other things, the non-opt out class members will receive monetary compensation for their alleged unreimbursed expenses without having to do anything.[5] Additionally, the lawsuit and settlement resulted in a change in business practices so that Beacon now mandates that all delivery drivers in California be issued company cell phones from April 15, 2019 forward, which addresses Plaintiff's allegations that drivers were required to use their personal cell phones for work without reimbursement.[6] Moreover, the parties reached the settlement and proposed Class Counsel moved for preliminary certification less than a year after filing the complaint, which is a phenomenal benefit to the class because it will provide swift and certain relief to Participating Class Members.[7] The parties thus seek a court order: (a) preliminarily approving the proposed settlement; (b) provisionally certifying the class and appointing class representatives and class counsel; (c) approving the proposed class notice packet and authorizing its dissemination; and (d) setting the final approval hearing.

## II.   BACKGROUND

### A.   Procedural History

- **January 28, 2019** – Plaintiff filed a class action complaint against Beacon Roofing Supply, Inc. in the District Court for the Southern District of

---

[4] Martin Decl., Ex. 1, ¶
[5] Martin Decl., Ex. 1, ¶ 64(a).
[6] Martin Decl., ¶ 10.
[7] Martin Decl., ¶ 3.

*(Footnote continued)*

California, alleging causes of action for (1) failure to reimburse for business expenses and (2) unfair business practices.[8]

- **February 20, 2019** – Defendant Beacon Sales Acquisition, Inc. filed an answer indicating they were incorrectly sued as Beacon Roofing Supply, Inc.[9]
- **May 7, 2019** – The Parties filed a Joint Motion for leave to file a First Amended Complaint adding Beacon Sales Acquisition, Inc. as a party.[10]
- **May 8, 2019** – The Court granted the parties' Joint Motion.[11]
- **May 8, 2019** – Plaintiff filed the First Amended Complaint.[12]
- **May 16, 2019** – Plaintiff submitted the required PAGA notice letter to the Labor and Workforce Development Agency ("LWDA") via online submission. On May 16, 2019, Plaintiff mailed the same to Defendants via certified mail with return receipt.[13]
- **June 6, 2019** – Plaintiff filed a Motion seeking leave to file a Second Amended Complaint adding a cause of action for violations under PAGA.[14]
- **July 26, 2019** – The Court granted Plaintiff's Motion seeking leave to file a Second Amended Complaint.[15]
- **July 26, 2019** – Plaintiff filed the Second Amended Complaint[16]

**B. Beacon's Alleged Wrongdoings**

Beacon Roofing Supply, Inc. is one of the largest distributors of residential and non-residential roofing and complementary building products in North

---

[8] Dkt 1
[9] Dkt 3
[10] Dkt 17
[11] Dkt 18
[12] Dkt 22
[13] Martin Decl., ¶ 3
[14] Dkt 23
[15] Dkt 39
[16] Dkt 40

*(Footnote continued)*

America. Beacon currently operates over 500 locations in 50 U.S. states and 6 Canadian provinces.[17]

Plaintiff alleges that Beacon employs Delivery Drivers and violated California law by failing to reimburse them for business expenses.[18] Beacon denies these allegations.[19]

Under California law, "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer … ." *Gattuso v. Harte-Hanks Shoppers, Inc*. (2007) 42 Cal.4th 554, 562 [67 Cal. Rptr. 3d 468, 169 P.3d 889].

California courts have further elaborated that, in the context of using a personal cell phone for business use, "reimbursement is always required… otherwise the employer would receive a windfall because it would be passing its operating expenses on to the employee." *Cochran v. Schwan's Home Serv., Inc*., 228 Cal. App. 4th 1137,1143-44.

In response, Beacon contends that the expense was not necessary because (1) Beacon made company cell phones and tablets available to its drivers and issued such devices to many of its drivers throughout the Class Period; and (2) Beacon was not aware of alleged personal cell phone expenses because no driver ever submitted a request for reimbursement despite Beacon having policies and procedures in place for drivers to do so. Thus, Beacon contended that the expense reimbursement issue was one based predominantly on individualized inquiries.[20]

**C. Discovery**

Proposed Class Counsel conducted discovery and research before and after filing the complaint. Proposed Class Counsel also obtained information from

---

[17] Martin Decl., ¶ 4
[18] Dkt 23
[19] Martin Decl., ¶ 5
[20] Martin Decl., ¶¶ 6-7

*(Footnote continued)*

witnesses; reviewed and analyzed relevant documents, information, and data; researched the applicable laws and potential defenses; and prepared a damages model.[21] The parties also engaged in significant formal discovery. Plaintiff served lengthy requests for production of documents and special interrogatories, to which Beacon provided initial and supplemental responses. Beacon also produced key policy documents related to Plaintiff and his expense reimbursement claim as well as company data related to Class Members' use of company cell phones. In addition, Beacon served Plaintiff with an extensive list of requests for production to which he provided initial and supplemental responses. In total, the parties exchanged over 1,100 pages of documents, in addition to substantial amounts of relevant data regarding Class Members.

**D. Mediation and Settlement Negotiations**

On May 6, 2019, the parties mediated the case at an Early Neutral Evaluation conference ("ENE") with Magistrate Judge Linda Lopez. The case did not settle at the ENE conference. But after the ENE, the parties continued to engage in arms-length negotiations, including attending a full-day of in-person settlement negotiations on August 5, 2019. The parties did not reach an agreement on August 5, 2019, but eventually did come to an agreement in principal on August 30, 2019, which ultimately culminated in the drafting and execution of this Settlement.[22]

**E. Addition of PAGA Claims**

On May 16, 2019, Plaintiff gave written notice of alleged PAGA violations stemming from his underlying cell phone expense reimbursement claim by filing an appropriate notice online with the LWDA and by sending the notice via certified mail to Beacon.[23] Plaintiff then filed a Motion seeking leave to file a

---

[21] Martin Decl., ¶ 8.
[22] Martin Decl., ¶ 9.
[23] Martun Decl. ¶ 3

*(Footnote continued)*

Second Amended Complaint on June 6, 2019.[24] The Motion was Granted by the Court on July 26, 2019 and Plaintiff filed the Second Amended Complaint on July 26, 2019.[25]

## III. SETTLEMENT TERMS

### A. Settlement Amount

As a result of arms-length negotiations, Beacon agreed to pay a total of $230,000 ("Gross Settlement Amount").[26] This amount is based on the following:

- At least $97,500 shall go to 351 Class Members who collectively worked 26,698 workweeks during the Class Period. If the number of Class Members or weeks varies more than 5% from these figures, Plaintiff and Class Counsel shall have the option, but not the obligation, to request that the Court not approve the Settlement.[27]

- $10,000 is allocated as penalties under PAGA, of which seventy-five percent or Seven Thousand Five Hundred Dollars ($7,500) shall be paid by the Settlement Administrator directly to the LWDA and the remaining twenty-five percent or Two Thousand Five Hundred Dollars ($2,500) shall be part of the Net Settlement Amount and shall be distributed to members of the PAGA Representative Group as part of their Individual Settlement Awards. The $2,500 is included in the $97,500 figure above.[28]

- Up to $10,000 shall go to the Settlement Administrator for costs incurred in administering the settlement.[29]

- Up to $105,000 to Proposed Counsel as attorney's fees and costs.[30]

---

[24] Dkt 23
[25] Dkt 39, 40
[26] Martin Decl., Ex. 1, ¶ 19.
[27] Martin Decl., Ex. 1, ¶¶ 64(a)(i), 62(e).
[28] Martin Decl., Ex. 1, ¶ 27.
[29] Martin Decl., Ex. 1, ¶ 40.
[30] Martin Decl., Ex. 1, ¶¶ 4, 5.

*(Footnote continued)*

- Up to $10,000 to Plaintiff Alan Moreno as a Class Representative Service Award.[31]

The Gross Settlement Amount is non-reversionary and includes all court-awarded attorney's fees and costs, administrative costs, incentive awards, and the LWDA payment. The Gross Settlement Amount is to be paid into an escrow account administered by a court-appointed administrator in one payment. Beacon must make this payment within 14 calendar days of the Effective Date of the Settlement.[32]

Subject to court approval, the court-appointed Settlement Administrator will pay from the Gross Settlement Amount all fees, costs, and awards, including any court-awarded incentive payment, attorney's fees and costs, administration costs, and PAGA penalties. The remaining amount, referred to in the Settlement as the Net Settlement Amount, will be paid to Participating Class Members (*i.e.* all Class Members who do non-opt) and the PAGA Representative Group, as explained below.[33]

**B. Class Representative Service Award**

Plaintiff Alan Moreno worked diligently to represent Class Members' best interests. Subject to Court approval, the settlement provides for a Service Award of up to $10,000 to him for, among other things, prosecuting this case, taking the risks of serving as the class representative, providing factual information and documentation necessary to prosecute the action, communicating with counsel, and providing a general release of all claims, including any claims he might otherwise wish to pursue stemming from his termination by Beacon after filing this Complaint.[34]

---

[31] Martin Decl., Ex. 1, ¶ 10.
[32] Martin Decl., Ex. 1, ¶ 63.
[33] Martin Decl., Ex. 1, ¶ 64.
[34] Martin Decl., Ex. 1, ¶ 64(b).

*(Footnote continued)*

### C.    Attorney's Fees and Costs

The settlement provides that proposed Class Counsel may request Class Counsel Fees up to $100,000, plus costs up to $5,000.[35]

### D.    PAGA Award

For purposes of Section 2699(j) of the California Labor Code, $10,000 of the Settlement Fund will be treated as PAGA penalties, of which $7,500 will be paid to the California Labor and Workforce Development Agency ("LWDA").[36]   The remaining $2,500 will be distributed to the PAGA Representative Group, as part of their Individual Settlement Awards.

### E.    Administration Costs

Subject to court approval, the parties agreed to the appointment of Simpluris, Inc. as the third party Settlement Administrator to manage all settlement funds, locate class members, prepare and mail the class notice packets, and issue settlement payments, including payments to the class, the class representative, class counsel, tax authorities, and the Simpluris.[37] Simpluris' quote to perform all administrative tasks provided in the Settlement is capped at $10,000.[38]

### F.    Individual Class Members' Settlement Shares

The Settlement does not require Class Members to submit a claim to receive compensation.  Approximately $97,500 will be distributed to Participating Class Members and the PAGA Representative Grup as individual settlement shares prorated based on the number of workweeks they worked during the relevant time periods. The settlement shares are calculated as follows:

1.  Certain expenses, costs, payments, and taxes will be subtracted from the Settlement Fund:

---

[35] Martin Decl., Ex. 1, ¶ 64(c).
[36] Martin Decl., Ex. 1, ¶ 64(d).
[37] Martin Decl., Ex. 1, ¶ 64(e).
[38] Martin Decl., ¶ 14.

| Gross Fund Value ($230,000) | - | Incentive Award (Up to $10,000)<br>Class Counsel Fees (Up to $100,00)<br>Class Counsel Costs (Up to $5,000)<br>Administrative Costs (Up to $10,000)<br>PAGA Payment to LWDA ($7,500) | = | Net Common Fund (approx. At least $95,000 distributed to Participating Class Members and $2,500 distributed to PAGA Representative Group) |
|---|---|---|---|---|

2. The remaining Net Common Fund will be distributed to Participating Class Members and PAGA Representative Group members based on the number weeks each individual member worked during the Class Period or PAGA Period (May 16, 2018 to April 14, 2019), as applicable:

| Net Settlement Amount (minus $2,500 PAGA Award) | ÷ | Total # of workweeks all delivery drivers worked from January 28, 2015 to April 14, 2019 | = | Dollar Value for Each Workweek |
|---|---|---|---|---|
| Dollar Value for Each Workweek | x | Total # of workweeks you worked from January 28, 2015 to April 14, 2019 | = | Individual Settlement Amount (plus relevant prorated portion of the $2,500 PAGA Award) |

Assuming every Class Member participates in the settlement, the average settlement share for 351 members each working approximately 1.5 years is approximately $277.78 which is equivalent to, on average, reimbursement of approximately $15 per month. The potential recovery is significant given (1) the recovery amounts to a full expense reimbursement as outlined below, (2) the speed in which members will receive their settlement payments, (3) the benefit resulting from Beacon's change to its business practices to eliminate any further personal

cell phone reimbursement issues by facilitating and mandating the use of company-issued phones from April 15, 2019 forward, and (4) Beacon's defenses as outlined in Section IV herein.[39]

Thus, the settlement is fair, reasonable, and in the Class' best interest, particularly after balancing the proposed settlement terms, the likelihood of protracted and costly litigation had a settlement not been reached, and the value of obtaining significant classwide relief and avoiding the risk of potentially not being able to pursue class-wide relief. If approved, the Settlement also avoids the risk that the claims would fail on the merits on a dispositive motion and/or at trial or on appeal, resulting in no recovery and/or the risk that the Class would only obtain a relatively small recovery.[40]

### G. Unclaimed Funds

Participating class members will have 180 calendar days to cash their settlement checks. Any residue from the uncashed checks shall be paid by the Settlement Administrator to the California State Controller's Office's Unclaimed Property Division, with the identity of the Participating Class Member/PAGA Representative Group member to whom the funds belong.[41]

### H. Dissemination of Class Notice

Class notice will be distributed by direct mail. The proposed Class Notice is attached to the Settlement as Exhibit 1. The Notice sets forth a brief description of the case, provides the class definition, informs the class about the nature and scope of the settlement, sets forth the requested attorney's fees and costs and incentive payment, informs the class about their opportunity to be heard at the Final Approval Hearing, informs Class Members about their right to either object to or opt-out of the non-PAGA portion of the Settlement, and provides the procedures for doing so. The Notice also explains the res judicata effects of not

---

[39] Martin Decl. ¶ 10.
[40] Martin Decl., ¶ 11.
[41] Martin Decl., Ex. 1 ¶ 64(a)(v).

opting out and provides proposed Class Counsels' and the Settlement Administrator's contact information. The Notice further provides Class Members with their estimated settlement amount and explains how this amount was calculated.[42]

Before notices are mailed, the Settlement Administrator will conduct a search for a more current address through the National Change of Address Database maintained by the United States Postal Service. If any notices are returned as undeliverable, the Settlement Administrator will conduct one search for a more current address through other means, which may include an internet search and will re-mail the packets.[43]

**I. Procedures for Resolving Disputes**

The Class Notice discloses each Class Member's estimated settlement amount and the number of workweeks used to calculate that amount. If Class Members dispute the number of workweeks used to determine their settlement amount, they can contact the Settlement Administrator. [44]

The Settlement has procedures in place for resolving disputes. The Settlement Administrator will first try to resolve any dispute. If the Settlement Administrator cannot resolve the dispute, the Parties' counsel shall confer in good faith. If counsel cannot stipulate to a compromise, the parties shall seek resolution by the Court.[45]

**J. No Claim Form Requirement**

Class members do not have to do anything to receive money from the Settlement. There is no claim form requirement.

---

[42] Martin Decl., Ex. 1, E. 1.
[43] Martin Decl., Ex. 1, ¶ 62(a)(ii).
[44] Martin Decl., Ex. 1, ¶ 62(f).
[45] Martin Decl. Ex. 1, ¶ 62(a)(iv).

*(Footnote continued)*

### K. Opt-Out/Request for Exclusion Procedures

To be excluded from the non-PAGA portion of the Settlement, Class Members must submit a Request for Exclusion to the Settlement Administrator by the Response deadline.[46] As directed in the proposed Class Notice, the Request for Exclusion must (1) contain the name and last 4 digits of the Social Security number of the person requesting exclusion; (2) be signed by the Class Member; and (3) be mailed to the administrator, postmarked no later than 30 days after the Class Notice packet is initially mailed. Anyone who opts-out of the non-PAGA portion of the Settlement will not receive money from the Settlement aside from their prorated portion of the employees' percentage of the PAGA Award, will not be bound by the Settlement except for the PAGA Released Claims, and will not have the right to object, appeal or comment on the non-PAGA portion of the Settlement.[47]

There is no right to opt out of the PAGA Representative Group.

### L. Objection Procedures

Any class member, who does not submit a valid and timely opt-out request to the Settlement Administrator, may object to the settlement by submitting his or her objection to the Settlement Administrator by the response deadline. The objection must (1) state the full name of the Class Member; (2) be signed by the Class Member; (3) state the grounds for the objection; and (4) must be postmarked by the response deadline and returned to the Settlement Administrator at the specified address. Class members who opt-out of the settlement cannot object to the non-PAGA portion of the Settlement.[48]

---

46 Martin Decl., Ex. 1, ¶ 62(b).
47 Martin Decl., Ex. 1, ¶ 62(b).
48 Martin Decl., Ex. 1, ¶ 62(b).

## IV. THE SETTLEMENT PROVIDES ADEQUATE COMPENSATION

### A. Valuations of the Claim for Settlement

#### 1. Unreimbursed Business Expenses

**Alleged Violation**. Plaintiff alleged that Beacon required its Delivery Drivers to use their personal cell phones to perform their necessary work-related duties, including but not limited to navigating to delivery locations, logging their hours worked, and calling customers and managers. Plaintiff alleged that Beacon improperly failed to reimburse Delivery Drivers for a reasonable portion of their personal cell phone expenses based on the amount of time that Delivery Drivers used their personal cell phone for the work duties.

**Initial Valuation**. Proposed Counsel valued the total liability exposure for this claim at approximately **$61,000.** Proposed Counsel calculated this exposure as follows:

- A forty-hour workweek is 23.8 percent of a total workweek
- According to the CTIA, which collects wireless industry data, the average cell phone bill is $41.50 per month.[49]
- Thus, if a putative class member used their work cell phone for work 23.8 percent of the time, and the average cell phone cost is $41.50 per month, the business expense portion of the bill would be $9.88, or $2.28 per workweek.

**Risks**. Although Plaintiff is confident that this issue is certifiable, Plaintiff considered Beacon's arguments when evaluating this claim. Beacon argued that (1) some putative Class Members were issued phones upon request, (2) Class Members who were not issued a company phone had the option to request one if they wished to do so and felt it was necessary to conduct their job duties, (3) Beacon provided separate GPS devices and tablets that Delivery Drivers could and did use for navigation, and (4) Beacon had an expense reimbursement policy in

[49] Martin Decl., Ex 2

effect that allowed Drivers to request reimbursement for reasonable and necessary business expenses. Beacon also asserted that in a non-settlement context, class certification would not be appropriate, including because individualized issues would predominate as to the amount of personal expense (if any) each Delivery Driver incurred, whether the Delivery Driver had the option to receive a company-issued phone is s/he requested one, and whether any alleged failure to reimburse was due to a uniform, state-wide policy or an issue with a specific location, manager, etc. Beacon further argued that there is no easy way of identifying those who incurred business expenses because there are no records indicating who was issued phones for the entire Class Period. Moreover, Beacon argued that it was Beacon's policy and practice to reimburse drivers for business expenses.[50]

**2. PAGA Penalties**

**Alleged Violation.** Plaintiff sought PAGA penalties based on the nonpayment of overtime and missed break premiums.

**Valuation**. PAGA claims are difficult to evaluate because there are many obstacles to the actual award of the civil penalty. First, defendants routinely argue that penalties cannot accrue until a court has actually found a violation to exist. Here, as of yet, there has been no such finding. Additionally, § 2699(e)(1) and (2) give trial courts discretion to decrease potential civil penalties. Second, defendants routinely argue that when statutory penalties are imposed, the imposition of additional civil penalties under PAGA is unjust, *etc*. Several courts have addressed this issue and have exercised broad discretion to dramatically limit such awards, including:

- *Fleming v. Covidien Inc.,* 2011 WL 7563047, at *3-4 (C.D. Cal. Aug. 12, 2011) (invoking § 2699(e)(2) and reducing PAGA penalty award from $2.8 million to $500,000);

---

[50] Martin Decl., ¶ 12.

- *Makabi v. Gedalia,* No. BC468146, (L.A. Super. Ct. May 8, 2013)(trial court invoked § 2699(e)(2) and declined to apply any PAGA penalties, despite finding that defendants violated PAGA);
- *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1203, 1214, 78 Cal. Rptr. 3d 572 (2008) (approving reduction of penalty amount to one-third of the damages award even though there was "no evidence that Cintas [did] not entertain a good faith belief that the LWO did not apply to workers in Plaintiff's position");
- *Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36, 138 Cal. Rptr. 3d 130 (2012)(reducing penalty amount by 30% where "defendants took their obligations under Wage Order No. 9 seriously and attempted to comply with the law).

Thus, the likelihood of the full amount of penalties being awarded where, as here, the underlying "premium pay" sums are sought and in light of the Court's discretion to deny or significantly reduce PAGA penalties,[51] particularly when the prescribed award would be "unjust, arbitrary and oppressive, or confiscatory"[52] is unlikely. Based on the various risks, Plaintiff valued the PAGA claim as follows:

- The PAGA period is from May 16, 2018 to April 14 ,2019, which is 21.7% of the total Class Period.[53]
- There were approximately 13,349 bi-weekly pay periods throughout the total Class Period. Thus, there are an estimated 2,896.7 pay periods in the PAGA period.[54]
- Some of the putative Class Members were issued cell phones or had access to cell phones during the PAGA period. Thus, for purposes of

---

[51] *See* Cal. Labor Code § 2699(e)(2).
[52] *Id.*
[53] Martin Decl., Ex. 1, ¶ 28.
[54]

*(Footnote continued)*

this analysis, proposed Class Counsel estimated there were violations in 50% of the pay periods (which is 1,448 pay periods).[55]

Proposed Class Counsel assessed a $7 penalty for each bi-weekly pay period (which is approximately 3 times the per workweek amount of underlying damages calculated above), for a damage amount of $10,136.[56] In sum, Plaintiff and Proposed Class Counsel valued the claims at settlement as follows:

| **SETTLEMENT NEGOTIATION CLAIM VALUATIONS** | | |
|---|---|---|
| **Unreimbursed Business Expenses** | **PAGA Penalties** | **TOTAL** |
| ~$61k | ~$10k | ~$71k |

**B. Valuation for The Primary Claims Based on Proposed Settlement**

Plaintiff valued all claims during settlement negotiations at approximately $71k and ultimately settled this case so that putative class members would receive $97,500.[57] So, the case settled at approximately 160% of the valuation amount. The settlement amount will be distributed as follows:

| **SETTLEMENT CLAIM VALUATIONS AFTER SUBTRACTING FEES, COSTS, AND AWARDS** | | |
|---|---|---|
| **Unreimbursed Expenses** | **PAGA Penalty to LWDA** | **TOTAL** |
| ~$97,500 | $7,500 | $105,000 |

**C. Analysis of Class Members' Average Settlement Shares**

Assuming every class member participates in the settlement, the average settlement share for 351 members each working approximateky 1.5 years is

55

56 In Carrington v. Starbucks the Court awarded PAGA penalties in the amount of $5 per violation. Carrington v. Starbucks Corp., 30 Cal. App. 5th 504, 517, 241 Cal. Rptr. 3d 647, 659, 2018 Cal. App. LEXIS 1190, *18

57

*(Footnote continued)*

approximately $277.78 which is equivalent to, on average, reimbursement of approximately $15 per month.[58]

As outlined above, assuming each class member made their personal cell phone available for business use 23.8% of the total time they used their cell phone (*i.e.*, 40 hours out of the 168 hours in a week), and using the average cell phone bill cost of $41.50, each putative class member would have incurred alleged, unreimbursed monthly business expenses of approximately $9.88. Based on these assumptions, proposed Class Members are receiving almost 60% more than their calculated expenses incurred based on proposed Class Counsel's analysis.

## V. PRELIMINARY APPROVAL IS WARRANTED

### A. The Law Favors Settlement

It is well established that settlements are the preferred means of dispute resolution, particularly in class actions where substantial resources can be conserved by avoiding the time, cost and rigor of prolonged litigation. *See Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."). Indeed, the preference for settlement is evident in the Federal Rules of Civil Procedure themselves. *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008).

The policies favoring settlement apply with particular force in this case, where approximately 351 current and former California employees allege that they were not reimbursed for business expenses incurred from using their personal cell phones. Given the very high costs of litigating a wage-and-hour case against a well-funded company, class members would have difficulty pursuing their claims individually. Plus, individual lawsuits and/or arbitrations would clog the courts

[58] Martin Decl., ¶ 10.

and take years to resolve. The proposed settlement is the best and only means to ensure that all class members receive prompt and efficient relief.

**B. The Preliminary Approval Process**

Court approval of class action settlements is a two-step process: preliminary approval and final approval. Manual for Complex Litigation, (Fourth) ("MCL 4th") § 21.632 (2004). At the preliminary approval stage, the court must "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id*. The court must also make a preliminary determination whether the class may be certified for settlement purposes under Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997). After preliminary approval, notice of the proposed settlement is given to the class, and the court conducts a final approval hearing, also known as a fairness hearing. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the fairness hearing, the court will consider arguments for and in opposition to approval of the settlement, including comments submitted by class members in response to the class notice. The fairness hearing, however, is not "a trial or rehearsal for trial on the merits." *Officers for Justice,* 688 F.3d at 625. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id*.

While the parties certainly believe that this settlement meets all the criteria for final approval, at this juncture, they ask only that the Court take the first step in the process and grant preliminary approval of the settlement.

### C. The Settlement Is in the Range of Possible Approval

At this preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008) (citing *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir.1982)). "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing . . ." *Young v. Polo Retail, LLC,* No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006) (citing Manual for Complex Litigation, § 30.44 (2nd ed. 1985).

In determining whether a settlement falls within the range of possible approval, courts consider whether the negotiations occurred at arm's length, whether sufficient discovery or investigation took place, and whether the proponents of the settlement are experienced in similar litigation. *See* Alba Conte & Herbert B. Newberg, 2 Newberg on Class Actions, § 11.41(4th ed. 2002). Considering the signficant discovery and settlement efforts here, these criteria are satisfied.

#### 1. The Settlement Was Achieved at Arm's Length

The settlement is presumptively fair because there is nothing to suggest collusion between the parties. To the contrary, the parties settlement negotiations were intiated and guided by an initial early neutral evaluation conference with the Honorable Linda Lopez who provided valuable insight into the strengths and weaknesses of each side's position. *See, e.g., In Re HP Laser Printer Litig.,* No. SACV 07-0667 AG (RNBx), 2011 WL 3861703, at *4 (C.D. Cal. Aug 31, 2011) (finding the fact that the parties appeared before a neutral third party mediator evidence supporting a finding that there was no collusion between the parties in

reaching settlement). The parties then engaged in further extensive arms-length negotiations and exchanged extensive additional relevant documents and data, ultimately culminating in the proposed Settlement, which falls well within the range of fair, reasonable, and adequate relief given the claims and defenses at issue.

**2. Counsel Engaged in Extensive Discovery**

Proposed Class Counsel engaged in focused and thorough discovery. Proposed Counsel's investigation includes: propounding extensive discovery; locating and interviewing witnesses; extensive online research; preparing a damages model based upon the information gathered; and reviewing and analyzing documents produced by Beacon and nonparties.[59] As noted above, the parties engaged in significant written discovery, and in total, exchanged and analyzed over 1100 pages of relevant documents, policies, and data applying to Class Members and Plaintiff's claims. Class Counsel also interviewed Delivery Drivers and engaged in significant fact investigation before and after filing this Action. Given the single, underlying personal cell phone reimbursement theory of liability at issue, the discovery and investigation that the parties conducted was extensive and more than sufficient to allow Class Counsel to adequately value the case for settlement purposes.

**3. The Settlement Suffers from No Obvious Deficiencies**

The settlement has no "obvious deficiencies" and confers substantial benefits to class members. In sum, approximately 351 members will be given the opportunity to receive monetary compensation for allegedly unreimbursed business expenses without having to submit a claim. Given the relief and uncertainties of protracted litigation, the settlement is unquestionably well within the range of possible approval. In addition, any Class Member who has concerns

---

[59] Martin Decl., ¶ 8.

regarding the Settlement has the option to object to the Settlement or opt-out from the non-PAGA portion of the Settlement.

**4. The Requested Incentive Payment Is Reasonable**

The proposed Class Representative incentive award is fair and reasonable. As the Ninth Circuit observed:

> Incentive awards are fairly typical in class action cases. Such awards are discretionary, and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general. Awards are generally sought after a settlement or verdict has been achieved. *Rodriguez v. West Publishing Corp*., 563 F.3d 948, 958-59 (9th Cir. 2009) (emphasis and citations omitted).

The parties agreed that Plaintiff may seek a Class Representative Service Awardof up to $10,000 because, among other things, he took the initiative to be named in this lawsuit, assisted in the case investigations and preparing discovery, consulted with counsel, assisted with locating witnesses and unnamed class members, located key documents, accepted substantial personal risks and responsibilities on the class' behalf, and executed a general release, which releases all claims, including any claims he might otherwise wish to bring stemming from his termination.[60] Plaintiff will provide a declaration supporting his requested Service Award with the motion for attorney's fees and costs. Under the circumstances mentioned above and which will be discussed in detail in the attorney's fee motion, the requested amount – to which Beacon does not object – is reasonable. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. 3:07-md-1827 SI, 2011 WL 7575003, at *2 (N.D. Cal. Dec. 27, 2011) (approving $15,000 incentive awards for 11 class representatives "in recognition of their work performed for the benefit of the class and risks undertaken"); *In re Wachovia Corp. "Pick-A-Payment"*

[60] Martin Decl. ¶ 23.

*Mortg. Mktg. & Sales Pracs. Litig.,* No. 5:09-md-02015 JF, 2011 WL 1877630, at *7 (N.D. Cal. May 17, 2011) (approving class representative incentive awards ranging from $5,000 to $14,250 each); *Singer v. Becton Dickinson and Co.,* 08-cv-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) (finding class representative award of $25,000 reasonable).

**5. The Requested Attorneys' Fees and Costs Are Reasonable**

The requested attorney's fees and costs are reasonable. Proposed Class Counsel achieved an excellent and timely settlement after thoroughly investigating Plaintiff's claims. The Settlement avoids the uncertainties and risks associated with years of protracted litigation, contested class certification, litigating a motion for summary judgment, trial, post-trial motions, and litigating a potential appeal. Throughout this litigation, proposed Class Counsel dedicated time and resources in litigating the case and will continue to do so through the settlement approval process.[61] For purposes of preliminary approval, the Court is only being asked to determine whether the Settlement's provision allowing proposed Class Counsel to request up to the stated amount should be preliminary approved.

The Settlement provides and the parties have agreed that proposed Class Counsel may apply to the Court for an amount not to exceed $100,000 in attorneys' fees plus up to $5,000 in actual costs.[62] This was separately negotiated and represents proposed Class Counsel's time expended in securing this settlement.

Proposed Class Counsel will request $100,000 in attorneys' fees and $10,000 in costs, which were separately negotiating as fair compensation for the time and effort proposed Class Counsel put into the case. The United States Supreme Court instructs that a request for attorney's fees should not result in a second major litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "Ideally, of course," the Court continued, "litigants will settle the amount of a fee." *Id.* (internal citations omitted). The parties have adhered to this wisdom. The

---

[61] Martin Decl. ¶ 15.
[62] Martin Decl. Ex. 1, ¶ 64(c).

requested fees and costs were negotiated at arms-length after the settlement fund. The requested fees and costs are justified because roposed Class Counsel obtained excellent results for the class in this matter. At the preliminary approval stage, however, the Court need only determine whether the proposed fees are within the range of reasonableness. Proposed Class Counsel will submit a separate motion for attorney fees that more fully sets forth the basis for the requested fees to be heard in connection with the final fairness hearing. At this juncture, however, proposed Class Counsel have not yet requested a specific fee award so the Court is merely being asked to approve the right to do so as set forth in the Settlement.

#### 6. Counsel Are Experienced in Similar Litigation

Proposed Class Counsel is well respected with a concentrated practice in wage-and-hour and consumer class actions. Proposed Class Counsel prosecuted numerous wage-and-hour class actions involving California Labor Code violations both in state and federal court.[63] Proposed Class Counsel competently evaluated the claims on a fully informed basis and concluded that this Settlement is in the Class' best interest.

## VI. CONDITIONAL CERTIFICATION IS WARRANTED

When granting preliminary approval of the Settlement, this Court also must determine that the proposed class is certifiable. *See* MCL 4th, § 21.632; *Amchem,* 521 U.S. at 620. Certification is warranted where, as here, it is demonstrated that the four prerequisites of Rule 23(a) — i.e. numerosity, commonality, typicality, and adequacy of representation — and one of the three requirements of Rule 23(b), are satisfied. *See* Fed. R. Civ. P. 23. Certification of a class action for damages requires a showing that:

> questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to

[63] Martin Decl. ¶¶ 16-19.

> other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

Given that the proposed class will be certified for the purposes of settlement only, the Rule 23(b)(3) requirement of superiority need not be met here because manageability issues are not a bar to certification "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Plaintiff proposes that the Court provisionally certify this action as a class action pursuant to Rule 23 for settlement purposes. Provisional certification is an appropriate device in settlements of class actions where the agreement to settle the case occurs before certification. *See, e.g., Jaffe v. Morgan Stanley & Co., Inc.,* No. C-06-3903 TEH, 2008 WL 346417, at *2-3 (N.D. Cal. Feb. 7, 2008); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *2-3 (N.D. Cal. Jun. 30, 2007). Under the circumstances, there is more than a sufficient factual basis for the Court to provisionally certify this action as a class action for settlement purposes and to appoint Alisa A. Martin of AMartin Law, PC and Lindsay C. David of Brennan & David Law Group— as Class Counsel.

**A. The Numerosity Requirement is Satisfied**

With respect to numerosity, Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Here, approximately 351 members of the proposed class were allegedly not reimbursed for all business expenses incurred. By any measure, the numerosity requirement is met. While it is true that on the low end, the Supreme Court has indicated that a class of 15 "would be too small to meet the numerosity requirement," *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980), the Ninth Circuit has upheld a class of only 20 persons. *Rannis v. Recchia,* 380 Fed. Appx. 646, 650-51 (9th Cir. 2010).

**B. The Commonality Requirement is Satisfied**

Here, common questions of law and fact exist and predominate (as required by Rule 23(b)(3)) and as to class over any individual questions, including:

- Whether Beacon is required to reimburse drivers for the use of their personal cell phones to perform their job duties under California law; and
- Whether Beacon engaged in unfair business practices as to class members in violation of California law.

Where, as here, Beacon's liability would be determined primarily by looking at their uniform policies and practices, and timekeeping and payroll records, the common questions in this litigation will predominate over any individual issues.

**C. The Typicality Requirement is Satisfied**

Plaintiff meets the typicality requirement of Rule 23(a). Plaintiff was a Delivery Driver during the Class Period, like all Class Members, allegedly suffered the same wage-and-hour violations set forth in Plaintiff's complaints and outlined above. He asserts the similar or identical legal claims as all Class Members, making his claims typical of the Class.

**D. The Adequacy Requirement is Satisfied**

With respect to the adequacy of representation requirement of Rule 23(a), named plaintiff must not have interests antagonistic to those of the class, and the plaintiff's attorneys must be qualified, experienced, and generally able to conduct the litigation. *See Hanlon*, 150 F.3d at 1020. As discussed above, proposed Class Counsel is exceptionally well qualified, experienced and able to conduct the litigation. Further, Plaintiff's interests are coextensive with those of the class he seeks to represent since Plaintiff was injured in the same manner and seeks identical relief as the Class. *See Lierboe v. State Farm Mut. Auto. Ins. Co.,* 350 F.3d 1018, 1022 (9th Cir. 2003) (finding that plaintiffs must have been injured themselves, not merely represent injured parties).

Having volunteered to serve as the Class Representative, Plaintiff has taken a leadership role in the litigation, performed and stood ready to perform any number of tasks, and demonstrated a commitment to bringing about the best results

possible for their fellow Class Members.[64] Moreover, Plaintiff and his attorneys have no interests antagonistic to the Class' interests. Plaintiff and his attorneys have and will continue to fairly and adequately protect the class' interests.[65]

## VII. THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS

Rule 23(e)(1) of the Federal Rules of Civil Procedure provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23 further requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See* Fed. R. Civ. P. 23(c)(2)(B).

Here, the parties agreed to provide notice via First Class U.S. Mail to all Class Members using the latest address Beacon has available after performing a nationwide change of address search.[66] This is the best practicable method, is commonly approved by other courts, and affords Class Members with all due process protections required by Rule 23. As such, the proposed Notice attached to the Settlement as Exhibit 1 should be approved.[67]

## VIII.CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court grant this motion in its entirety and consistent with the [Proposed] Order submitted herewith.

Dated: January 24, 2020

AMARTIN LAW, PC
BRENNAN & DAVID LAW GROUP

By: /s/ *Alisa A. Martin*

[64] Martin Decl. ¶¶ 20-24.
[65] Martin Decl. ¶ 24.
[66] Martin Decl., Ex. 1, Ex. 1.
[67] Martin Decl., Ex. 1, Ex. 1.

## Certificate of Service

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served January 24, 2020, with a copy of this document via the Court's CM/ECF system. I certify that all parties in this case are represented by counsel who are CM/ECF participants. Any other counsel of record will be served by electronic mail, facsimile transmission, and/or first class mail on this same date.

*/s/ Lindsay David*