UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN MORENO, on behalf of himself and all others similarly situated,<br><br>                        Plaintiff,<br><br>v.<br><br>BEACON ROOFING SUPPLY, INC., a Virginia Corporation, and BEACON SALES ACQUISITION, INC., a California Corporation,<br><br>                        Defendants. | Case No.: 19cv185-GPC(LL)<br><br>**ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**[Dkt. No. 54.]** |

Before the Court is Plaintiff Alan Moreno's unopposed Motion for Preliminary Approval of Class Action Settlement. (Dkt. No. 54.) Defendants filed a non-opposition on February 5, 2020. (Dkt. No. 55.) In response to the Court's request for additional documents, the parties filed additional declarations. (Dkt. No. 57.) The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1). Based on the reasoning below, the Court GRANTS Plaintiff's unopposed motion for preliminary approval of class action settlement.

/ / /

/ / /

1

**Procedural Background**

On January 28, 2019, Alan Moreno ("Plaintiff" or "Moreno") filed a putative wage and hour class action complaint against his former employer Beacon Roofing Supply, Inc. alleging causes of action for: (1) failure to reimburse business expenses under California Labor Code section 2802, and (2) unlawful business practices in violation of California Business and Professions Code section 17000 *et seq*. (Dkt. No. 1.) Moreno alleges that Defendant failed to reimburse him, and other delivery drivers, for business expenses resulting from the use of their personal cell phones on the job. (*Id.*)

On February 20, 2019, Defendant Beacon Sales Acquisition, Inc., improperly sued as Beacon Roofing Supply, Inc., filed an answer. (Dkt. No. 3.) On May 7, 2019, the parties filed a Joint Motion for leave to file a First Amended Complaint adding Beacon Sales Acquisition, Inc. as a party which was granted by the Court. (Dkt. No. 19, 20.) On May 8, 2019, Plaintiff filed the First Amended Complaint. (Dkt. No. 21.)

On May 6, 2019, Magistrate Judge Linda Lopez held an early neutral evaluation conference and the case did not settle. (Dkt. No. 14.)

On May 16, 2019, Plaintiff submitted the required PAGA notice letter to the Labor and Workforce Development Agency ("LWDA") via online submission and also sent a copy to Defendants. On May 28, 2019, Defendants Beacon Sales Acquisition, Inc. and Beacon Roofing Supply (collectively "Defendants" or "Beacon") filed their answer to the First Amended Complaint. (Dkt. No. 22.) On June 6, 2019, Plaintiff filed a motion seeking leave to file a Second Amended Complaint adding a cause of action for violations under the Private Attorneys General Act ("PAGA") pursuant to California Labor Code section 2699 *et seq*. that was not opposed. (Dkt. Nos. 23, 29.) On July 26, 2019, the Court granted Plaintiff's motion. (Dkt. No. 39.) On July 26, 2019, Plaintiff filed the operative Second Amended Complaint. (Dkt. No. 40.) On August 6, 2019, Defendants filed their answer to the Second Amended Complaint. (Dkt. No. 45.) On

August 5, 2019, the parties engaged in a full-day, in-person settlement negotiation.[1] (Dkt. No. 54-1, Martin Decl. ¶ 9.)  On September 18, 2019, the parties filed a notice of settlement.  (Dkt. No. 46.)

Proposed Class Counsel conducted extensive discovery and research before and after filing the complaint.  (Dkt. No. 54-1, Martin Decl. ¶ 8.)  Proposed Class Counsel obtained information from witnesses, reviewed and analyzed relevant documents, information, and data, researched the applicable laws and potential defenses, and prepared a damages model.  (*Id.*)  The parties also engaged in significant formal discovery where Plaintiff served lengthy requests for production of documents and special interrogatories, to which Beacon provided initial and supplemental responses.  (*Id.*)  Beacon also produced key policy documents related to Plaintiff and his expense reimbursement claim as well as company data related to Class Members' use of company cell phones.  (*Id.*)  In addition, Beacon served Plaintiff with an extensive list of requests for production to which he provided initial and supplemental responses.  (*Id.*)  In total, the parties exchanged over 1,100 pages of documents, in addition to substantial amounts of relevant data regarding Class Members.  (*Id.*)

## I.     Settlement Terms

The Settlement Agreement provides that Beacon agrees to pay a total of $230,000 ("Gross Settlement Amount").  (Dkt. No. 54-2, Martin Decl., Ex. 1, Sett. Ag. ¶ 63.)  This Gross Settlement Amount is to be distributed as follows:

a.  At least $97,500 shall go to 351 Class Members who collectively worked 26,698[2] workweeks during the Class Period. If the number of Class Members or weeks varies more than 5% from these figures, Plaintiff and Class Counsel shall have the option,

---

[1] It is not clear who conducted the settlement conference.   On August 1, 2019, Magistrate Judge Lopez vacated the settlement conference set for August 5, 2019 after a review of the parties' confidential settlement briefs and in light of the parties' potential discovery dispute.  (Dkt. No. 44.)
[2] (Dkt. No. 57, Landis Decl. ¶ 2.)

but not the obligation, to request that the Court not approve the Settlement. (*Id.* ¶¶ 23, 62(e), 64(a)(i).)

b. $10,000 is allocated as penalties under PAGA, of which seventy-five percent or Seven Thousand Five Hundred Dollars ($7,500) shall be paid by the Settlement Administrator directly to the Labor and Workforce Development Agency ("LWDA") and the remaining twenty five percent or Two Thousand Five Hundred Dollars ($2,500) shall be part of the Net Settlement Amount and shall be distributed to members of the PAGA Representative Group as part of their Individual Settlement Awards. The $2,500 is included in the $97,500 figure above. (*Id.* ¶ 27.)

c. Up to $10,000 shall go to the Settlement Administrator for costs incurred in administering the settlement. (*Id.* ¶ 40.)

d. Up to $105,000 to Proposed Counsel as attorneys' fees and costs. (*Id.* ¶¶ 4, 5.)

e. Up to $10,000 to Plaintiff Alan Moreno as a Class Representative Service Award. (*Id.* ¶ 10.)

The Gross Settlement Amount is non-reversionary, (*id.* ¶¶ 4, 5, 10, 27, 64(b) (c)), and includes all court awarded attorney's fees and costs, administrative costs, incentive awards, and the LWDA payment. Class members are not required to submit a claim in order to receive a share of the settlement. (*Id.* ¶ 64(a).) The Gross Settlement Amount is to be paid into an escrow account administered by a court-appointed administrator in one payment. Beacon must make this payment within 14 calendar days of the Effective Date of the Settlement. (*Id.* ¶ 63.) Subject to court approval, the court-appointed Settlement Administrator will pay from the Gross Settlement Amount all fees, costs, and awards, including any court-awarded incentive payment, attorney's fees and costs, administration costs, and PAGA penalties. The remaining amount, referred to in the Settlement as the Net Settlement Amount, will be paid to Participating Class Members (i.e. all Class Members who do not opt-out) and the PAGA Representative Group.

/ / /

/ / /

## II.    Certification of Settlement Class

Federal Rule of Civil Procedure ("Rule") 23 establishes four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Fed. R. Civ. P. 23(a).  Under Rule 23(b)(3), common questions must predominate over individual questions, Fed. R. Civ. P. 23(b)(3), and the class action device must be "superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

Plaintiff seeks to certify a Class defined as "all current and former employees of Beacon Sales Acquisition, Inc. and Beacon Roofing Supply, Inc., who worked in California as a delivery driver, or in another similar driver position, during the Class Period, i.e., January 28, 2015 to April 14, 2019", (Dkt. No. 54-2, Martin Decl., Ex. 1, Sett. Ag. ¶ 7).

Plaintiff argues the settlement class meets the numerosity requirement.  Numerosity is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). A class of 15 "would be too small to meet the numerosity requirement." *Gen. Tel. Co. of the Nw, Inc. v. EEOC*, 446 U.S. 318, 330 (1980).  The Ninth Circuit has upheld a class of 20.  *Rannis v. Recchia*, 380 Fed. App'x 646, 650-51 (9th Cir. 2010).  Here, the proposed Class consists of 351 members; the numerosity factor has been met.

Next, Plaintiff contends that the settlement class meets the predominance factors but does not address Rule 23(a)(2)'s commonality inquiry. Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality is established if plaintiffs and class members' claims "depend upon a common contention," "capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  While Plaintiff does not address this factor, the Court finds that the class members' claim that employees were not reimbursed for business expenses resulting from the use of their personal cellphones on the

job stems from the same legal claims and common nucleus of facts. Therefore, commonality has been met.

Predominance tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). "Rule 23(b)(3) requires a showing that *questions* common to the class predominate." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013) (emphasis in original). Here, common questions of law and fact exist and predominate over individual questions of whether Beacon is required to reimburse drivers for the use of their personal cell phones to perform their job duties under California law and whether Beacon engaged in unfair business practices as to class members in violation of California law. Because liability would be determined by looking at Beacon's uniform policies and practices, and timekeeping and payroll records, the Court concludes that predominance has been satisfied.

Plaintiff further maintains that the settlement class meets the typicality requirement. Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The named plaintiffs must be members of the class they seek to represent and they must "possess the same interest and suffer the same injury" as putative class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotations omitted). The representative claims are typical if they are "reasonably co-extensive with those of absent class members," though they "need not be substantially identical." *Parsons v. Ryan*, 764 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon v. Chrylser Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Plaintiff's claims are typical of those of the Class in that they were delivery drivers for Beacon and suffered the same wage and hour violations as Plaintiff.

Finally, Plaintiff claims that the class settlement meets the adequacy requirement. Representative parties must be able to "fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). In analyzing whether Rule 23(a)(4) has been met, the Court must ask two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel

prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citation omitted). Adequacy of representation is designed to deny certification in instances of "*actual* fraud, overreaching, or collusion." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (emphasis in original).

Plaintiff and counsel have no interests antagonistic to those of the Class, (Dkt. No. 54-1, Martin Decl. ¶ 24), and will continue to fairly and adequately protect the class' interests. (*Id.*) Proposed Class Counsel, Alisa Martin, has extensive experience in complex litigation, including class actions and her current practices focuses on complex class actions on behalf of consumers and employees.[3] (*Id.* ¶¶ 16-19.) In addition, Plaintiff has performed and was ready to perform any number of tasks, reviewed filings and documents, participated in several meetings and conference calls and attended the Early Neutral Evaluation conference and was always available to respond to his counsel's questions. (*Id.* ¶ 21.) By bringing the action, he risks that future employers will discover his involvement in this case and not offer him employment. (*Id.* ¶ 20.) He also undertook the risk of being liable for costs if he did not achieve a favorable outcome and made individual concessions to obtain the settlements. (*Id.* ¶ 23.) Based on these assertions, the Court concludes that adequacy has been met.

Finally, for settlement purposes only, a class settlement is superior to other available methods for a fair resolution of the controversy because the class mechanism will reduce litigation costs and promote greater efficiency. In a class action settlement, the Court need not address whether the case, if tried, would present issues of manageability under Rule 23(b)(3)(D). *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). In conclusion, the Court finds that the proposed class may be certified under Rule 23(b)(3), and the Court GRANTS preliminary certification of the Class for settlement purposes only.

---

[3] The Court notes Plaintiff has not set forth any conflict of interest, and conduct and involvement of co-counsel Lindsay C. David of Brennan & David Law Group in this litigation. (Dkt. No. 54-1.)

Under Rule 23(g), "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). The Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Plaintiff asks the Court to appoint Alisa A. Martin of AMartin Law, PC and Lindsay C. David of Brennan & David Law Group as Class Counsel. (Dkt. No. 54 at 30[4].) Ms. Martin has been engaged in discovery and researched the issues in this case before and after filing the complaint and has conducted analysis as to damages and generated a damages model. (Dkt. No. 54-1, Martin Decl. ¶¶ 8, 12.) She outlined her extensive experience in litigating complex consumer and employment class actions. (*Id.* ¶¶ 16-19.) From this experience, it appears that Ms. Martin has knowledge of the applicable law in this area. Lindsay David has been practicing complex labor and employment class action litigation since 2012, including individual employment litigation cases. (Dkt. No. 57-1, David Decl. ¶¶ 2, 3.) He asserts he has no interests that are antagonistic to the class' interests and and he will continue to fairly and adequately protect the class' interests. (*Id.* ¶ 4.) The Court concludes that Ms. Martin and Mr. David have satisfied the factors to support appointment as class counsel. The Court therefore GRANTS Plaintiff's request to appoint Alisa Martin of AMartin Law, PC and David C. Lindsay of Brennan & David Group as Class Counsel.

Additionally, the Court finds appointing Plaintiff Moreno, as class representative is appropriate. (*Id.* ¶¶ 20-24.) His interests align with those of the proposed class members, and no conflicts of interest have been revealed that would render him an inappropriate

---

[4] Page numbers are based on the CM/ECF pagination.

class representative.  (*Id.*)  Thus, the Court GRANTS Plaintiff's request to appoint Plaintiff as Class Representative

## III.    Preliminary Approval of Class Action Settlement

Next, the Court must determine whether to preliminarily approve the class action settlement.  Rule 23(e) was amended in 2018 to create uniformity amongst the circuits and to focus the inquiry on whether a proposed class action is "fair reasonable, and adequate."  Fed. R. Civ. P. 23(e), advisory committee notes (2018 amendment).   As amended, Rule 23(e) provides that a court may approve a proposed class action settlement "after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The first and second factors are viewed as "procedural" in nature, and the third and fourth factors are viewed as "substantive" in nature. Fed. R. Civ. P. 23(e)(2), advisory committee notes (2018 amendment).

### 1.    Plaintiff and Class Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  This analysis is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." Final approval criteria-Rule 23(e)'s multifactor test, 4 NEWBERG ON CLASS ACTIONS § 13:48 (5th ed.); *In re GSE Bonds Antitrust Litig*., 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting similarity of inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A)).

Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met.

### 2. The Settlement was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Here, the settlement negotiations were facilitated at the Early Neutral Evaluation Conference with Magistrate Judge Linda Lopez. Then the parties engaged in further extensive arms-length negotiations and exchanged detailed and comprehensive relevant documents, (Dkt. No. 54-2, Martin Decl., Ex. 1, Sett. Ag. ¶ 44), which culminated in a settlement. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."). Therefore, this Court concludes that the settlement is fundamentally fair and was negotiated at arm's length by counsel who is experienced in class action litigation.

### 3. The Relief Provided to the Class is Adequate

Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement. *See Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178-79 (9th Cir. 2013)).

Defendants have agreed to settle this matter for a non-reversionary total of $230,000 and $95,000 to go towards the unreimbursed business expenses claims. (Dkt. No. 54-2, Martin Decl., Ex. 1, Sett. Ag. ¶¶ 19, 23.) According to proposed Class Counsel's analysis, the proposed Class Members will receive almost 60% more than their calculated expenses incurred. (Dkt. No. 54 at 19-23.) Proposed Class Counsel valued the unreimbursed

business expenses at $61,000.  (*Id.*) In calculating the $61,000 valuation, proposed Class Counsel determined that

> a.  A forty-hour workweek is 23.8 percent of a total workweek
>
> b.  According to the CTIA, which collects wireless industry data, the average cell phone bill is $41.50 per month.  (Dkt. No. 54-3, Martin Decl. Ex. 2.)
>
> c.  Thus, if a putative class member used their work cell phone for work 23.8 percent of the time, and the average cell phone cost is $41.50 per month, the business expense portion of the bill would be $9.88, or $2.28 per workweek.  With the calculated 26,698 workweeks during the Class Period, the total amount of unreimbursed business expenses is about $60,871.44 or rounded to $61,000.

(Dkt. No. 54 at 19-20, 22-23.)  Ultimately, the case settled for $97,500.[5]  Assuming every one of the 351 class members participates in the settlement with each working 1.5 years, then the award amount is about $277.81 which is equivalent, on average, of reimbursement of $15 per month.  (*Id.* at 22-23.)

Plaintiff also asks the Court to approve a PAGA Representative Group consisting of "all current and former employees of Beacon Sales Acquisition, Inc. and Beacon Roofing Supply, Inc., who worked in California as a delivery driver, or in another similar driver position, during the PAGA Period, i.e., May 16, 2018 to April 14, 2019."[6]  (Dkt. No. 54-2, Martin Decl., Ex. 1, Sett. Ag. ¶ 30.)

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of himself and other current or former employees.  Cal. Lab. Code § 2699(a).  A plaintiff suing under PAGA "does so as the proxy or agent of the

---

[5] Of the $97,500 settlement award, $2,500 are PAGA penalties.  Below, the Court conducts a settlement fairness analysis of the gross $10,000 PAGA award with 25% of the award of $2,500 going to aggrieved employees.

[6] For the PAGA Representative Group, there is no right to opt out.  (Dkt. No. 54-2, Martin Decl., Ex. 1, Sett. Ag. ¶ 30.)  In other words, members of the PAGA Representative Group may not request exclusion from the PAGA Representative Group and, to the extent the Court approves the Settlement, will be bound by the release of all claims for civil penalties arising under PAGA.  (*Id.*)

state's labor law enforcement agencies." *Arias v. Superior Ct.*, 46 Cal. 4th 969, 986 (2009). A PAGA plaintiff thus has "the same legal right and interest as state labor law enforcement agencies" and the action "functions as a substitute for an action brought by the government itself"; therefore, "a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Id.* A plaintiff bringing a representative PAGA action not only owes a duty to their "fellow aggrieved workers," but "also owes responsibility to the public at large; they act, as the statute's name suggests, as a private attorney general." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133–34 (N.D. Cal. 2016). Under PAGA, civil penalties collected are distributed between the aggrieved employees (25%) and LWDA (75%). Cal. Lab. Code § 2699(i). Any settlement of PAGA claims must be approved by the Court. Cal. Lab. Code § 2699(l)(2). The proposed settlement must also be sent to the agency at the same time that it is submitted to the court.[7] Cal. Lab. Code § 2699(l)(2).

The California Supreme has held that PAGA actions are fundamentally different from class actions and a plaintiff need not satisfy the class action requirements. *Arias,* 46 Cal. 4th at 982-84. The Ninth Circuit has also held that a PAGA suit is fundamentally different from a class action under CAFA. *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123 (9th Cir. 2014) (district court had no subject matter jurisdiction over removed PAGA action under CAFA and motion to remand should have been granted). However, in *Baumann*, the Ninth Circuit specifically declined to address "whether a federal court may allow a PAGA action otherwise within its original jurisdiction to proceed under Rule 23 as a class action." *Id.* at 1124.

While PAGA requires a trial court to approve a PAGA setlement, district courts have noted there is no governing standard to review PAGA settlements. *Sanchez v. Frito-Lay, Inc.,* No. 1:14cv797-DAD-BAM, 2019 WL 4828775, at *12 (E.D. Cal. Sept. 30, 2019) (acknowledging "absence of authority governing the standard of review of PAGA settlements"). "'[N]either the California legislature, nor the California Supreme Court, nor

---

[7] Plaintiff has not indicated whether the proposed settlement was sent to the LWDA.

the California Courts of Appeal, nor the [LWDA] has provided any definitive answer' as to what the appropriate standard is for approval of a PAGA settlement." *Jordan v. NCI Grp., Inc*., No. EDCV161701JVSSPX, 2018 WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018) (quoting *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017)). Consequently, some district courts have used the guidance provided by the LWDA in *O'Connor v. Uber Techs., Inc*., 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016). *See Haralson v. U.S. Aviation Servs. Corp*., 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019); *Sanchez v. Frito-Lay, Inc.,* 2019 WL 4828775, at *12. In *O'Connor,* the LWDA commented,

> It is thus important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

*O'Connor*, 201 F. Supp. 3d at 1133 (quoting LWDA Response). Based on LWDA's Response, district courts have applied "a Rule 23-like standard" asking whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate." *Haralson,* 383 F. Supp. 3d at 972.

PAGA provides that "the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." Cal. Lab. Code § 2699(f)(2). However, a court may "award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2).

Proposed Class Counsel valued the PAGA penalties at $10,000 and calculated them as follows:

a. The PAGA period is from May 16, 2018 to April 14 ,2019, which is

21.7% of the total Class Period.

    b. There were approximately 13,349 bi-weekly pay periods throughout the total Class Period. Thus, there are an estimated 2,896.7 pay periods in the PAGA period.

    c. Some of the putative Class Members were issued cell phones or had access to cell phones during the PAGA period. Thus, for purposes of this analysis, proposed Class Counsel estimated there were violations in 50% of the pay periods (which is 1,448 pay periods).

    d. Proposed Class Counsel assessed a $7 penalty for each bi-weekly pay period (which is approximately 3 times the per workweek amount of underlying damages calculated above), for a damage amount of $10,136.56.

(Dkt. No. 54 at 20-22.) Of this amount, 75%, or $7,500 will be paid to the LWDA and 25 percent, of $2,500 will be paid to the settlement class members.

Although the proposed settlement significantly lower than the $100/$200 per violation penalty for each pay period,[8] the penalty of $7 for each bi-weekly pay period is, in fact, about 3x more than the per workweek amount of damages for the unreimbursed business expense calculation of $2.28 per workweek. Moreover, Defendants have corrected the alleged violation by providing all Delivery Drivers with a company issued cell phone. (Dkt. No. 54-1, Martin Decl. ¶ 10.)

Here, the class action settlement is "robust" as the $95,000 is about 160% of the valuation amount. Moreover, because the class members will receive PAGA penalties that are 3x higher in percentage than the class action settlement, the class action settlement, itself, is 60% more than the actual calculated expenses incurred, and the fact that Defendants have adjusted their policy to provide all Delivery Drivers with company issued cell phones, the Court finds that the Rule 23 settlement is "robust", *O'Connor*, 201 F. Supp. 3d at 1134 ("if the settlement for the Rule 23 class is robust, the purposes of PAGA may

---

[8] The Court is unable to conduct a calculation as it is not sure which of the 1,448 pay periods constitutes a first, second, or subsequent violation. But if using the $100/per violation per pay period, the penalties total $144,800.

be concurrently fulfilled"), and serves the deterrent purpose of the PAGA. (*Id.*) Furthermore, imposing PAGA statutory penalty, of $144,800 or more, would be unjust, arbitrary, oppressive and confiscatory. *See* Cal. Lab. Code § 2699(e)(2); *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 529 (2018) (reducing PAGA from $50 per initial violation to only $5 per initial violation because trial court found Starbuck's good faith attempts to comply with meal break obligations and because the violations were minimal). Therefore, the Court finds that Plaintiff's PAGA penalty of $10,000 is "fundamentally fair, reasonable, and adequate." *See Haralson*, 383 F. Supp. 3d at 972.

In sum, the Court concludes that the potential recovery is significant because the recovery amounts to a full expense reimbursement plus more, class members will automatically receive their settlement payments after final approval without having to file a claim, and Beacon has changed its business practices and now mandates the use of company-issues phones as of April 15, 2019. (Dkt. No. 54-1 Martin Decl. ¶ 10.)

### i. The Costs, Risks, and Delay of Trial and Appeal Support Preliminary Approval

The costs, risks, and delay of trial and appeal further support preliminary approval. Proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class, having summary judgment granted against Plaintiff, or losing at trial. Such considerations have been found to weigh heavily in favor of settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (risk, expense, complexity and duration of litigation supports settlement); *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. C 06-3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

### ii. The Proposed Method of Distributing Relief to the Class Is Effective

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." Final approval criteria—Rule 23(e)(2)(C)(ii): Distribution method, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.). The claims process is not burdensome and

straightforward because it does not require Class Members to submit a claim to receive compensation. (Dkt. No. 54-2, Martin Decl. Ex. 1, Sett. Ag. ¶ 64(a).) The approximate $97,500 will be automatically distributed based on the number of weeks each member worked during the Class Period, January 28, 2015 to April 14, 2019, or PAGA Period from May 16, 2018 to April 14, 2019. (*Id.*) *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig*., No. 8:10ML 02151 JVS, 2013 WL 3224585, at *18 (C.D. Cal. June 17, 2013) ("The requirement that class members download a claim form or request in writing a claim form, complete the form, and mail it back to the settlement administrator is not onerous."). Significantly, in the event the Court approves a lesser amount for Settlement Administrator expenses, the amount of Incentive Award, Class Counsel fees or Class Counsel expenses, the remaining amount will be added to the Net Settlement Amount and distributed to the Class Members. (Dkt. No. 54-2, Martin Decl., Ex. 1, Sett. Ag. ¶¶ 4, 5, 10, 27, 64(b), (c).) This ensures that Settlement Class Members will receive the maximum amount of the settlement fund and that no money will revert back to Defendant. *See McGrath v. Wyndham Resort Dev. Corp.,* No. 15CV1631 JM (KSC), 2018 WL 637858, at *6 (S.D. Cal. Jan. 30, 2018) (finding a non-reversionary settlement fund to be "fair, reasonable, and adequate."). Accordingly, the Court finds the proposed method of distribution of class funds to be effective.

### iii. The Proposed Attorneys' Fee Award

The Settlement Agreement provides that Class Counsel may request an award of up to $100,000 in attorneys' fees and up to $5,000 in attorneys' costs, subject to this Court's approval. (Dkt. No. 54-2, Martin Decl., Ex. 1, Sett. Ag. ¶¶ 5, 64(c).) "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. Here, it is not clear whether Plaintiff seeks attorneys' fees under the lodestar method or percentage-of-recovery method but the Court has discretion to determine which calculation method to use in order to achieve a reasonable result. *Id.* at 942. Typically, under the percentage of recovery, the "benchmark"

for attorneys' fees is 25% of the common fund. *Id.* Here, the Court notes that the $100,000 attorneys' fees is slightly over 2x the Net Settlement Amount. At the preliminary approval stage, the Court does not need to determine attorneys' fees and Class Counsel indicates she will fully address the basis for the requested fees in the forthcoming motion for attorneys' fees and costs.

### iv. No Side Agreements Were Made in Connection with the Proposed Settlement

Rule 23(e)(3) requires that the Parties "must file a statement identifying any agreement made in connection with the [settlement] proposal." Fed. R. Civ. P. 23(e)(3). Plaintiff has not identified any such agreement and the Court is not aware of any other agreements.

### 4. The Proposed Settlement Treats Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires the Court to consider whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In doing so, the Court determines whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Here, the settlement treats each class member equally as each class member's settlement payment will be calculated pro rata based on the number of workweeks they worked during the relevant time period. (Dkt. No. 54-2, Martin Decl., Ex. 1, Sett. Ag. ¶ 64(a).)

Accordingly, the Settlement (including all terms of the Settlement Agreement and exhibits thereto) is hereby **PRELIMINARILY APPROVED**. The Court further finds and orders as follows:

1. For purposes of this Settlement only, the Court hereby conditionally: (1) approves the PAGA Representative Group, composed of: All current and former employees who were employed by Defendants as a delivery driver, or in a similar position, during the PAGA Period, i.e. May 16, 2018 to April 14, 2019; and (2) certifies the Class, composed

of: All current and former employees who were employed by Defendants as a delivery driver, or in a similar position, during the Class Period, i.e. January 28, 2015 to April 14, 2019. Should, for whatever reason, the Settlement not become final, the fact that the Parties were willing to stipulate to approval of the PAGA Representative Group and certification of the Class as part of the Settlement shall have no bearing on, nor be admissible in connection with, the issue of whether a PAGA representative group should be approved or a class should be certified in a non-settlement context.

2.     For Settlement purposes only, the Court hereby appoints Plaintiff Alan Moreno as the class representative for both the PAGA Representative Group and the Class.

3.     For Settlement purposes only, the Court hereby appoints Alisa A. Martin of AMARTIN LAW and Lindsay David of BRENNAN & DAVID LAW GROUP as Class Counsel for both the PAGA Representative Group and the Class.

4.     The Court hereby appoints Simpluris, Inc. as the Settlement Administrator to administer the Settlement of this matter as more specifically set forth in the Settlement Agreement.

5.     Assuming this Settlement is finally approved and becomes effective, Class Members will release the Released Parties from all Released Claims. Likewise, the PAGA Representative Group will release the Released Parties from all Released PAGA Claims. The Released Claims and Released PAGA Claims include a California Civil Code section 1542 Waiver, which applies to the claims for payments, benefits and/or related penalties that were alleged or that could have been alleged based on the facts stated in the Plaintiff's original and amended complaints. Class Members will release such Released Claims for the time period from January 28, 2015 through April 14, 2019. The PAGA Representative Group will release such Released PAGA Claims for the time period from May 16, 2018 through April 14, 2019.

6.     To the extent permitted by law, pending a determination as to whether this Settlement should be finally approved, Class Members and PAGA Representative Group members, whether directly, representatively, or in any other capacity, whether or not such

18

persons have appeared in this Action, shall not institute or prosecute any of their respective Released Claims or Released PAGA Claims against the Released Parties.

7.      The Court approves, as to form and content, the proposed Class Notice and the Information Sheet (attached to the Settlement Agreement as Exhibits 1-2). The Court finds that the Class Notice, along with the Information Sheet, fairly and adequately advises Class Members of the terms of the proposed Settlement and the benefits available to Class Members thereunder. The Court further finds that the Class Notice advises of the pendency of the Action, of the proposed Settlement, of Class Members' right to receive their share of the Settlement, of the scope and effect of the Settlement's Released Claims and Released PAGA Claims, of the preliminary Court approval of the proposed Settlement, exclusion and objection timing and procedures, of the date of the Final Approval Hearing, and of the right to file documentation in support of or in opposition to the Settlement and to appear in connection with the Final Approval Hearing. Thus, the Court finds that the Class Notice clearly comports with all constitutional requirements, including those of due process. The Court further finds that the mailing of the Class Notice to the last known address of Class Members as specifically described within the Settlement Agreement, with measures taken for verification of addresses, as set forth therein, constitutes an effective method of notifying Class Members of their rights with respect to the Action and this Settlement.

8.      No later than seven (7) calendar days after the entry of the Preliminary Approval Order, Defendants shall transmit to the Settlement Administrator, in a readable, ready to use electronic Excel format spreadsheet, the Class Information for each Class Member, including: (1) full name, (2) last known mailing address, (3) social security number; and (4) number of Compensable Workweeks and Compensable PAGA Workweeks.

9.      No later than fourteen (14) calendar days after receiving the Class Information, the Settlement Administrator shall mail the Class Notice and Information Sheet to all Class Members, using the most current mailing address information available.

10.     No later than thirty (30) calendar days after the Class Notice was mailed (i.e., the Response Deadline), any Class Member requesting exclusion from the Class must submit his/her Request for Exclusion by mailing it to the Settlement Administrator as instructed in the Notice of Settlement.  Class Members who fail to submit a timely and valid Request for Exclusion on or before the Response Deadline shall be Class Members bound by all terms of the Settlement and the Final Approval Order entered in this Action.  To be valid, the Request for Exclusion must: (1) contain the name and the last 4 digits of the Social Security number of the person requesting exclusion; (2) be signed by the Class Member; and (3) be postmarked by the Response Deadline and returned to the Settlement Administrator at the specified address.  If the Request for Exclusion does not contain the information listed in (1)-(2) or is not postmarked by the Response Deadline and returned to the Settlement Administrator at the specified address, it will not be deemed a timely and valid Request for Exclusion from the Class.  Any Class Members who submit a timely and valid Request for Exclusion from the Settlement will not be bound by the terms of the Settlement as it relates to the Released Claims.  Any Class Member who submits a timely and valid Request for Exclusion will not have any right to object, appeal or comment on the Settlement.

11.     There is no right to opt out of the PAGA Representative Group.  Thus, under no circumstances will a Class Member who has submitted a timely and valid Request for Exclusion be considered to have opted out of the PAGA Representative Group.

12.     No later than 30 calendar days after the Class Notice was mailed (i.e., the Response Deadline), any Class Member wishing to object or comment upon the Settlement must submit his/her Notice of Objection by mailing it to the Settlement Administrator as instructed in the Notice of Settlement.  Class Members who fail to submit a timely and valid Notice of Objection shall be deemed to have waived any objections and shall be foreclosed from making any objections to the Settlement.  To be valid, the Notice of Objection must: (1) state the full name of the Class Member; (2) be signed by the Class Member; (3) state the grounds for the objection; and (4) be

postmarked by the Response Deadline and returned to the Settlement Administrator at the specified address. If the Notice of Objection does not contain the information listed in (1)-(3) or is not postmarked by the Response Deadline and returned to the Settlement Administrator at the specified address, it will not be deemed a timely and valid Notice of Objection to this Settlement.

13.     The Final Approval Hearing shall be held on **June 19, 2020 at 1:30 p.m**. in the Edward J. Schwartz, United States Courthouse, 221 West Broadway, San Diego, CA 92101, Courtroom 2D, 2nd Floor, to consider the fairness, adequacy and reasonableness of the proposed Settlement and Class Counsel's requests for (a) the PAGA Award; (b) Plaintiff's Class Representative Service Award; (c) Class Counsel Fees; (d) Class Counsel Expenses; and (e) Settlement Administration Costs. All briefs and materials in support of the Final Approval Order shall be filed with this Court on or before **May 22, 2020** (twenty-eight calendar days before the Final Approval Hearing).

14.     This Settlement is not a concession or admission and shall not be used against Defendants or any of the Released Parties as an admission or indication with respect to any claim of any fault or omission by Defendants or any of the Released Parties. Whether or not the Settlement is finally approved, neither the Settlement, nor any document, statement, proceeding or conduct related to the Settlement, nor any reports or accounts thereof, shall in any event be: (a) Construed as, offered or admitted in evidence as, received as or deemed to be evidence for any purpose adverse to the Released Parties, including, but not limited to, evidence of a presumption, concession, indication or admission by Defendants or any of the Released Parties of any liability, fault, wrongdoing, omission, concession or damage; or (b) Disclosed, referred to, or offered or received in evidence against any of the Released Parties in any further proceeding in the Action, or in any other civil, criminal or administrative action or proceeding, except for purposes of enforcing the Settlement. The Court's findings are for purposes of certifying a class in the context of this Settlement and will not have any claim or issue or evidentiary preclusion or estoppel effect in any other action against the Released Parties

19cv185-GPC(LL)

or in this litigation if the Settlement is not finally approved. If for any reason the Court does not execute and file a Final Approval Order, or if the Effective Date, as defined in the Settlement Agreement, does not occur for any reason whatsoever, the Settlement Agreement and all evidence and proceedings had in connection therewith shall be without prejudice to the status quo ante rights of the Parties to the litigation, as more specifically set forth in the Settlement Agreement, and this Preliminary Approval Order shall be rendered null and void and shall be vacated.

15.     Pending further orders of this Court, all proceedings in this matter except those contemplated in this Preliminary Approval Order and in the Settlement Agreement are stayed.

16.     The Court expressly reserves the right to adjourn or continue the Final Approval Hearing from time to time without further notice to Class Members.

          IT IS SO ORDERED.

Dated: March 9, 2020

Hon. Gonzalo P. Curiel
United States District Judge