UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN MORENO, on behalf of himself and all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>BEACON ROOFING SUPPLY, INC., a Virginia Corporation, and BEACON SALES ACQUISITION, INC., a California Corporation,<br><br>                                    Defendants. | Case No.:  19cv185-GPC(LL)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARD**<br><br>**[Dkt. No. 60.]** |

Before the Court is Plaintiff Alan Moreno's Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs and Service Award.  (Dkt. Nos. 60, 61.)  Defendants filed a non-opposition on May 29, 2020.  (Dkt. No. 62.)  The Court held a final approval hearing on June 19, 2020.  (Dkt. No. 64.)  Lindsay David and Alisa Martin appeared as counsel for Plaintiff and Joshua Levine appeared as counsel for Defendants.  (*Id.*)  On July 2, 2020, in response to the Court's direction, Class Counsel filed a supplemental declaration concerning their request for attorneys' fees.  (Dkt. No. 65.)  Based on the reasoning below, the Court GRANTS Plaintiff's unopposed Motion

for Final Approval of Class Action Settlement and GRANTS Motion for Attorneys' Fees, Costs and Service Award.

## Procedural Background

On January 28, 2019, Alan Moreno ("Plaintiff" or "Moreno") filed a putative wage and hour class action complaint against his former employer Beacon Roofing Supply, Inc. alleging causes of action for: (1) failure to reimburse business expenses under California Labor Code section 2802, and (2) unlawful business practices in violation of California Business and Professions Code section 17000 *et seq*. (Dkt. No. 1.) Moreno alleges that Defendant failed to reimburse him, and other delivery drivers, for business expenses resulting from the use of their personal cell phones on the job. (*Id*.) On February 20, 2019, Defendant Beacon Sales Acquisition, Inc., improperly sued as Beacon Roofing Supply, Inc., filed an answer. (Dkt. No. 3.) On May 7, 2019, the parties filed a Joint Motion for leave to file a First Amended Complaint adding Beacon Sales Acquisition, Inc. ("Defendant" or "Beacon") as a party which was granted by the Court. (Dkt. Nos. 19, 20.) On May 8, 2019, Plaintiff filed the First Amended Complaint. (Dkt. No. 21.)

On May 16, 2019, Plaintiff submitted the required PAGA notice letter to the Labor and Workforce Development Agency ("LWDA") via online submission and also sent a copy to Defendants. (Dkt. No. 54-1, Martin Decl. ¶ 3.) On May 28, 2019, Defendants Beacon Sales Acquisition, Inc. and Beacon Roofing Supply (collectively "Defendants" or "Beacon") filed their answer to the First Amended Complaint. (Dkt. No. 22.) On June 6, 2019, Plaintiff filed a motion seeking leave to file a Second Amended Complaint adding a cause of action for violations under the Private Attorneys General Act ("PAGA") pursuant to California Labor Code section 2699 *et seq*. that was not opposed. (Dkt. Nos. 23, 29.) On July 26, 2019, the Court granted Plaintiff's motion. (Dkt. No. 39.) On July 26, 2019, Plaintiff filed the operative Second Amended Complaint. (Dkt. No. 40.) On August 6, 2019, Defendants filed their answer to the Second Amended Complaint. (Dkt. No. 45.) On August 5, 2019, the parties engaged in a full-day, in-person settlement

negotiation.  (Dkt. No. 54-1, Martin Decl. ¶ 9.)  On September 18, 2019, the parties filed a notice of settlement.  (Dkt. No. 46.)

Class Counsel conducted extensive discovery and research before and after filing the complaint.  (Dkt. No. 54-1, Martin Decl. ¶ 8.)  Class Counsel obtained information from witnesses, reviewed and analyzed relevant documents, information, and data, researched the applicable laws and potential defenses, and prepared a damages model.  (*Id.*)  The parties also engaged in significant formal discovery where Plaintiff served lengthy requests for production of documents and special interrogatories, to which Beacon provided initial and supplemental responses.  (*Id.*)  Beacon also produced key policy documents related to Plaintiff and his expense reimbursement claim as well as company data related to Class Members' use of company cell phones.  (*Id.*)  In addition, Beacon served Plaintiff with an extensive list of requests for production to which he provided initial and supplemental responses.  (*Id.*)  In total, the parties exchanged over 1,100 pages of documents, in addition to substantial amounts of relevant data regarding Class Members.  (*Id.*)

On March 9, 2020, the Court preliminarily approved the class action settlement.  (Dkt. No. 59.)  The Court preliminarily certified a Class defined as "all current and former employees of  Beacon Sales Acquisition, Inc. and Beacon Roofing Supply, Inc., who worked in California as a delivery driver, or in another similar driver position, during the Class Period, i.e., January 28, 2015 to April 14, 2019."  (*Id.* at 5-7.)  On March 12, 2020, the third-party administrator Simpluris, Inc. administered the notice and administration process according to the Court's order.  (Dkt. No. 60-4, Castro Decl. ¶¶ 2-3.)  Notice packets were mailed to all 349 individuals on the Class List.  (*Id.* ¶ 6-7.)  Ten notice packets were returned with forwarding addresses and notice packets were re-mailed to these addresses.  (*Id.* ¶ 8.)  As to the notice packets that were returned as undeliverable and with no forwarding address, Simpluris performed an advanced address search and as a result of the skip trace, eight updated addresses were obtained and the

packets were re-mailed.  (*Id*. ¶¶ 8-9.)  Two notice packets were deemed undeliverable as no updated addresses were located despite the skip tracing efforts.  (*Id*. ¶ 9.)

To date, one Class Member has opted out from the Settlement and no objections have been received.  (*Id.* ¶¶ 10-11.)  Because there are 348 Class Members and $101,500.00 is calculated as the Net Settlement Amount, the highest Settlement Share will be $841.63 and the average to be paid is about $291.67.  (*Id.* ¶ 12.)

**I.   Settlement Terms**

The Settlement Agreement provides that Beacon agrees to pay a total of $230,000 ("Gross Settlement Amount").  (Dkt. No. 60-3, Martin Decl., Ex. 1, Sett. Ag. ¶ 63.)  This Gross Settlement Amount is to be distributed as follows:

a.  At least $101,500 shall go to 351 Class Members who collectively worked 26,698[1] workweeks during the Class Period.

b.  $10,000 is allocated as penalties under PAGA, of which seventy-five percent or Seven Thousand Five Hundred Dollars ($7,500) shall be paid by the Settlement Administrator directly to the Labor and Workforce Development Agency ("LWDA") and the remaining twenty five percent or Two Thousand Five Hundred Dollars ($2,500) shall be part of the Net Settlement Amount and shall be distributed to members of the PAGA Representative Group as part of their Individual Settlement Awards.  The $2,500 is included in the $101,500 figure above.

c.  $6,000 shall go to the Settlement Administrator for costs incurred in administering the settlement.

d.  $100,000 to Counsel as attorneys' fees and costs.

e.  $10,000 to Plaintiff Alan Moreno as a Class Representative Service Award. (Dkt. No. 60-4, Castro Decl. ¶ 12.)

---

[1] (Dkt. No. 57, Landis Decl. ¶ 2.)

The Gross Settlement Amount is non-reversionary, (Dkt. No. 60-3, Martin Decl. Ex. 1, Sett. Ag. ¶¶ 4, 5, 10, 27, 64(b) (c)), and includes all court awarded attorney's fees and costs, administrative costs, incentive awards, and the LWDA payment. Class members are not required to submit a claim in order to receive a share of the settlement. (*Id.* ¶ 64(a).) The Gross Settlement Amount is to be paid into an escrow account administered by a court-appointed administrator in one payment. Beacon must make this payment within 14 calendar days of the Effective Date of the Settlement. (*Id.* ¶ 63.) Subject to court approval, the court-appointed Settlement Administrator will pay from the Gross Settlement Amount all fees, costs, and awards, including any court-awarded incentive payment, attorney's fees and costs, administration costs, and PAGA penalties. The remaining amount, referred to in the Settlement as the Net Settlement Amount, will be paid to Participating Class Members (i.e. all Class Members who do not opt-out) and the PAGA Representative Group.

## II.    Final Approval of Class Action Settlement

There is a strong judicial policy in favor of class action settlements and whether to approve a class action settlement is "committed to the sound discretion of the trial judge." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992*); see also Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]").

Federal Rule of Civil Procedure 23(e) provides that a court may approve a proposed settlement "only after a hearing and on finding that it is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2) (amended 2018).  The first and second factors are viewed as "procedural" in nature, and the third and fourth factors are viewed as "substantive" in nature.  Fed. R. Civ. P. 23(e)(2), advisory committee notes (2018 amendment).

Where the parties negotiate a settlement agreement before the class has been certified, "settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'"  *Roes 1-2, SFBSC Mgmt. Inc.*, 944 F.3d 1035, 1048 (9th Cir. 2019) (citing *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)).

## 1.    Plaintiff and Class Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  At the preliminary approval stage, the Court found that Plaintiff and Class Counsel have adequately represented the class and because there appears to be no changes since the preliminary approval order, the Court concludes that this factor continues to be satisfied.

## 2.    The Settlement was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).  Here, the settlement negotiations were facilitated at the Early Neutral Evaluation Conference with Magistrate Judge Linda Lopez.  Then the parties engaged in further extensive arms-length negotiations and exchanged detailed and comprehensive relevant documents, including propounding extensive discovery, locating and interviewing witnesses, conducting extensive online research, preparing a damages model based on the information gathered, and reviewing and analyzing documents produced by Defendants and nonparties.  (Dkt. No. 60-3, Martin Decl., Ex. 1, Sett. Ag. ¶ 44; Dkt. No. 61-2, Martin Decl. ¶ 5.)  After the appropriate investigative efforts, the parties arrived at a settlement.  Based on this, the Court concludes

that the settlement is fundamentally fair and was negotiated at arm's length.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."); *In Re HP Laser Printer Litig*., No. SACV 07-0667 AG (RNBx), 2011 WL 3861703, at *4 (C.D. Cal. Aug 31, 2011) (fact that the parties appeared before a neutral third party mediator evidence supported finding of non-collusion).

### 3.    The Relief Provided to the Class is Adequate

Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement.  *See Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing *In re HP Inkjet Printer Litig*., 716 F.3d 1173, 1178-79 (9th Cir. 2013)).

Defendants have agreed to settle this matter for a non-reversionary total of $230,000.  One Class Member has opted out.  Therefore, the net settlement amount for the 348 participating class members will be about $101,500.  (Dkt. No. 60-4. Castro Decl. ¶ 12.)

Prior to settlement, Class Counsel valued the unreimbursed business expenses at $61,000.  (Dkt. No. 61-2, Martin Decl. ¶ 10.)  In calculating the $61,000 valuation, Class Counsel determined that

a.  A forty-hour workweek is 23.8 percent of a total 168 hour workweek

b.  According to the CTIA, which collects wireless industry data, the average cell phone bill is $41.50 per month.  (Dkt. No. 54-3, Martin Decl., Ex. 2.)

c.  Thus, if a putative class member used their work cell phone for work 23.8 percent of the time, and the average cell phone cost is $41.50 per month, the business expense portion of the bill would be $9.88, or

7

$2.28 per workweek.  With the calculated 26,698 workweeks during the Class Period, the total amount of unreimbursed business expenses is about $60,871.44 or rounded to $61,000.

(Dkt. No. 61-2, Martin Decl. ¶ 10; Dkt. No. 54 at 19-20, 22-23.[2])  Because there are 348 participating class members, the highest Settlement share will be about $841.63 and the average settlement share will be about $291.67.  (Dkt. No. 60-4, Castro Decl. ¶ 12.)

Class Counsel valued the PAGA[3] penalties at $10,000 and calculated them as follows:

a.  The PAGA period is from May 16, 2018 to April 14 ,2019, which is 21.7% of the total Class Period.

b.  There were approximately 13,349 bi-weekly pay periods throughout the total Class Period. Thus, there are an estimated 2,896.7 pay periods in the PAGA period.

c.  Some of the putative Class Members were issued cell phones or had access to cell phones during the PAGA period. Thus, for purposes of this analysis, Class Counsel estimated there were violations in 50% of the pay periods (which is 1,448  pay periods).

d.  Class Counsel assessed a $7 penalty for each bi-weekly pay period (which is approximately 3 times the per workweek amount of underlying damages calculated above), for a damage amount of $10,136.56.

(Dkt. No. 54 at 20-22.)  Of this amount, 75%, or $7,500 will be paid to the LWDA and 25 percent, of $2,500 will be paid to the settlement class members.

The Court concludes that the class action settlement is "robust" as the $101,500 is about 160% of the valuation amount.  Moreover, because the class members will receive PAGA penalties that are 3x higher in percentage than the class action settlement, the class

---

[2] Page numbers are based on the CM/ECF pagination.

[3] For the PAGA Representative Group, there is no right to opt out.  (Dkt. No. 60-3, Martin Decl., Ex. 1, Sett. Ag. ¶ 30.)  In other words, members of the PAGA Representative Group may not request exclusion from the PAGA Representative Group and, to the extent the Court approves the Settlement, will be bound by the release of all claims for civil penalties arising under PAGA.  (*Id.*)

action settlement, itself, is 60% more than the actual calculated expenses incurred, and Defendants have also adjusted their policy to provide all Delivery Drivers with company issued cell phones, the Court finds that the Rule 23 settlement is "robust", *O'Connor v. Uber Techs., Inc.,* 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016) ("if the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled"), and serves the deterrent purpose of the PAGA.  (*Id.*)

### i. The Costs, Risks, and Delay of Trial and Appeal Support Final Approval

The costs, risks, and delay of trial and appeal further support final approval. In assessing whether to settle, Plaintiff considered Defendants' arguments that some class members were issued phones, many class members had the option of using company phones and Beacon had an expense reimbursement policy in effect; therefore, there was an uncertain question whether the class could be certified based on predominance as individualized issues could predominate.  (Dkt. No. 61-2, Martin Decl. ¶ 10.)  Proceeding in this litigation in the absence of settlement posed various risks such as failing to certify a class, having summary judgment granted against Plaintiff, or losing at trial.   Such considerations have been found to weigh heavily in favor of settlement.  *See Rodriguez,* 563 F.3d at 966 (risk, expense, complexity and duration of litigation supports settlement); *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. C 06-3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").  Thus, the costs, risks, and delay of trial and appeal support final approval.

### ii. The Method of Distributing Relief to the Class Is Effective

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." Final approval criteria—Rule 23(e)(2)(C)(ii): Distribution method, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.).  Here, the claim process is not burdensome and straightforward because it does not require Class Members to submit a claim to receive

compensation.  (Dkt. No. 60-3, Martin Decl. Ex. 1, Sett. Ag. ¶ 64(a).)  Significantly, in the event the Court approves a lesser amount for Settlement Administrator expenses, the amount of Incentive Award, Class Counsel fees or Class Counsel expenses, the remaining amount will be added to the Net Settlement Amount and distributed to the Class Members.  (Dkt. No. 60-3, Martin Decl., Ex. 1, Sett. Ag. ¶¶ 4, 5, 10, 27, 64(b), (c).)  This ensures that Settlement Class Members will receive the maximum amount of the settlement fund and that no money will revert back to Defendant.  *See McGrath v. Wyndham Resort Dev. Corp.,* No. 15CV1631 JM (KSC), 2018 WL 637858, at *6 (S.D. Cal. Jan. 30, 2018) (finding a non-reversionary settlement fund to be "fair, reasonable, and adequate.").  Accordingly, the Court finds the method of distribution of class funds to be effective.

### iii. The Attorneys' Fee Award

Class Counsel seek $100,000 in attorneys' fees and $5,000 in costs.  Based on the reasoning below, the Court finds that the attorneys' fee and costs are reasonable.

### iv. No Side Agreements Were Made in Connection with the Settlement

Rule 23(e)(3) requires that the Parties "must file a statement identifying any agreement made in connection with the [settlement] proposal."  Fed. R. Civ. P. 23(e)(3).  Plaintiff has not identified any such agreement and the Court is not aware of any other agreements.

### 4.    The Settlement Treats Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires the Court to consider whether the Settlement Agreement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  In doing so, the Court determines whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  Here, the settlement treats each class member equally as each class member's settlement payment will be calculated pro rata based on the number of workweeks they worked during the relevant time period.  (Dkt. No. 60-3, Martin Decl., Ex. 1, Sett. Ag. ¶ 64(a).)

After careful review of the factors, the Court finds that settlement is fair, reasonable, and adequate.

### III.   Class Representative Incentive Award

Plaintiff seeks $10,000 for an incentive award as compensation for his contribution to the action.

Incentive awards are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. "Incentive awards are fairly typical in class action cases," but are ultimately "discretionary." *Id.* at 958. In deciding whether to approve an incentive award, courts consider factors including:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal. 1995). Here, after filing the complaint, Plaintiff was terminated and was falsely accused of theft. (Dkt. No. 61-5, Moreno Decl. ¶ 2.) Beacon tried to fabricate evidence by approaching his brother, who was also a Beacon employee, and advised him that if he wrote a declaration accusing Plaintiff of theft, he could keep his job. (*Id.*) Plaintiff responded to voluminous and invasive discovery that included his personal cell phone records for a period of four years and multiple trips to the mobile carrier's office to retrieve the documents which were time consuming. (*Id.* ¶ 3.) He took two days off from work to attend two separate scheduled early neutral evaluation conferences. (*Id.* ¶ 4.) He also actively participated in prosecuting the case spending numerous hours gathering documents, answering his attorneys' questions and helping to evaluate documents that Beacon provided. (*Id.* ¶ 6.) Plaintiff also reached out to witnesses to obtain information and helped to evaluate documents and information that Beacon produced. (*Id.* ¶ 7.)

Under these circumstances, the service award of $10,000 to the Class Representative is fair and reasonable in light of the risk he accepted and the time and effort he spent for the benefit of the Class.  The Court GRANTS Plaintiff's request for class representative incentive award.

## IV.    Motion for Attorneys' Fees

Class counsel seeks attorney's fees in the amount of $100,000 based on the lodestar method and costs in the amount of $5,000.  (Dkt. No. 61-1 at 9.)

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 941 (9th Cir. 2011).  The Court has discretion to determine which calculation method to use in order to achieve a reasonable result.  *Id.* at 942.  At the fee-setting stage, the interests of the plaintiffs and their attorneys diverge and described as "adversarial"; therefore, the district court assumes a fiduciary role for the class plaintiffs. *In re Mercury Interactive Corp. Sec. Litig*., 618 F.3d 988, 994 (9th Cir. 2010).

In common fund cases, a district court has discretion to apply either the percentage of the fund method or the lodestar method.  *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Wash. Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1295-96 (9th Cir. 1994).  Once a method is selected, the Ninth Circuit encourages district courts to cross-check with the other method in order to guard against an unreasonable result.  *In re Bluetooth*, 654 F.3d 944 ("Thus, even though the lodestar method may be a perfectly appropriate method of fee calculation, we have also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method."); *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1050 (9th Cir.2002) ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award"); *In re Toys R U-Delaware, Inc. –Fair and Accurate Credit Transactions Act (FACTA) Litig*., 295 F.R.D. 438, 459 (C.D. Cal. 2014)

("a court applying the lodestar method to determine attorney's fees may use the percentage-of-the-fund analysis as a cross-check"); *but see Campbell v. Facebook, Inc*., 951 F.3d 1106, 1126 (9th Cir. 2020) (citing *In re Hyundai and Kia Fuel Economy Litig.,* 926 F.3d 539, 571 (9th Cir. 2019) (courts are not required to perform a "crosscheck" using the percentage method given difficulty in measuring dollar value of injunctive relief.)).

Here, Class Counsel seek attorneys' fees under the lodestar method in the amount of $100,000 and provides a summary of their billing record in this case.  (Dkt. No. 61-2, Martin Decl. ¶ 12.)

To determine whether counsels' requested amount is reasonable, courts: (1) calculate the "lodestar" figure by multiplying the number of hours reasonably expended litigating the successful claims by a reasonable hourly rate; and (2) adjust the lodestar "upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors," including "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth*, 654 F.3d at 941-42.  Here, Class Counsel seek the lodestar amount without any adjustments.

### a.   Reasonable Hourly Rate

Class Counsel seek $742 per hour[4] for Alisa Martin and $455 per hour for Lindsay David.

Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits.  *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 979 (9th Cir. 2008) (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)); *see Jadwin v. Cnty. of Kern*, 767 F. Supp. 2d 1069, 1129 (E.D. Cal. 2011) (if a case filed in the Fresno

---

[4] The Court notes that the motion for attorneys' fees seeks a rate of $742 per hour for Alisa Martin.  (Dkt. No. 61-1 at 9; Dkt. No. 61-2 at 5-9.)  However, in her supplemental declaration, Martin seeks a rate of $745 per hour.  (Dkt. No. 65, Martin Decl. ¶ 2.)  The Court relies on the original rate sought of $742 per hour.  The Court ordered Class Counsel to provide a supplemental declaration in order to provide support for her rate of $742 per hour and not to increase her rate.

Division of the Eastern District of California, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate . . . ."); *Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1166 (N.D. Cal. 2012) ("The first step in the lodestar analysis requires the court to determine a reasonable hourly rate for the fee applicant's services. This determination involves examining the prevailing market rates in the community charged for similar services by lawyers of reasonably comparable skill, experience, and reputation.").

The fee applicant bears a burden to establish that the requested rates are commensurate "with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987) ("The fee applicant has the burden of producing satisfactory evidence . . . that the requested rate is in line with those prevailing in the community."). The applicant meets this burden by "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.; see also Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110-11 (9th Cir. 2014) ("Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community . . . are satisfactory evidence of the prevailing market rate." (citations omitted)).

Here, Alisa Martin has been in practice for eighteen years since 2002 and has focused her practice on complex class actions on behalf of consumers and employees. (Dkt. No. 61-2, Martin Decl. ¶¶ 13, 15.) In a supplemental declaration, Martin relies on hourly rates received in a federal and state case in this district as well as a declaration from a colleague with comparable skills and experience in the community to support her rate of $742 per hour. (Dkt. No. 65-1, Martin Decl., Ex. A.) In a state court case, in August 2019, her hourly of $742 per hour was approved in San Diego Superior Court in a wage and hour class action entitled *David Sanchez v. Ameriflight*, 37-2014-00023517-CU-OE-CTL. (Dkt. No. 65-2, Martin Decl., Ex. B; *id.*, Ex. C.) Next, in a class action case in this district,

District Judge Jeffrey Miller approved an hourly rate of $705 per hour for class counsel with twelve and sixteen years of practice in a class action in May 2019.  (Dkt. No. 65-4, Martin Decl., Ex. D; *id.*, Ex. E.)  Finally, Martin's colleague, James Patterson, a twenty-year practicing class action attorney, declared that $745 per hour for Martin's years of practice and experience is on the lower end.  (Dkt. No. 65-1, Martin Decl., Ex. A, Patterson Decl.)  Based on these cases, the Court finds that Alisa Martin's rate of $742 per hour is reasonable.

Attorney Lindsay David has been in practice since 2012.  (Dkt. No. 61-4, David Decl. ¶ 2.)  She has been practicing labor and employment litigation focusing primarily on complex labor and employment actions.  (*Id.*)  David, who has been in practice for eight years, seeks a rate of $455 per hour which the Court finds is reasonable.  *See Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 979 (S.D. Cal. 2014) (collecting cases where attorneys practicing eight years were approved rates of up to $510 per hour).

### b.    Reasonably Hours Expended

Class Counsel assert they spent a total of 208 hours on the case for a total lodestar amount of $115,012.  (Dkt. No. 61-2, Martin Decl. ¶ 12.)  After a review of the hours spent on the case, the hours are reasonable and notes that Class Counsel seek less than the lodestar amount.

In determining whether the lodestar amount is reasonable, the Court may conduct a percentage of the fund cross-check.  In this case, the Court notes that the $100,000 in attorneys' fees is about 43% of the common fund.  Class Counsel claim that they took on the case even though it did not have significant liability exposure which meant that their fees would likely exceed class compensation.  (Dkt. No. 61-1 at 4.)  Because their fees exceed the class compensation, they claim they are seeking less than the actual lodestar amount $115,012 and requests $100,000.  (*Id.*)

"In awarding percentages of the class fund, courts frequently take into account the size of the fund."  *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008).  It is established that 25% of the gross settlement amount is the benchmark for

attorneys' fees awarded under the percentage method, with 20 to 30% as the usual range in common fund cases where the recovery is between $50 and 200 million. *Vizcaino*, 290 F.3d at 1047, 1050 n.4; *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 480, 491 (E.D. Cal. 2010) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.").

"Other case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in case in which the common fund is relatively small." *Cicero v. DirecTV, Inc.,* No. EDCV 07-1182, 2010 WL 2991486, at * 6 (C.D. Cal. July 27, 2010) (citing Rubenstein, Conte and Newberg, NEWBERG ON CLASS ACTIONS at § 14:6). In cases where the common fund is under $10 million, fees are often above 25%. *Craft*, 624 F. Supp. 2d at 1127 (citing *Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) ("[m]ost of the cases Class Counsel have cited in which high percentages such as 30–50 percent of the fund were awarded involved relatively smaller funds of less than $10 million").

Any percentage-of-the-fund award "must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. In determining whether an adjustment from the benchmark is appropriate, courts in the Ninth Circuit consider the following factors: "(a) the results achieved; (b) the risk of litigation; (c) the skill required, (d) the quality of work; (e) the contingent nature of the fee and the financial burden; and (f) the awards made in similar cases." *Vasquez*, 266 F.R.D. at 492.

Here, the gross settlement amount of $230,000 justifies a higher percentage of the fund for attorneys' fees between 30-50%. The Court finds that the amount recovered is excellent in that it exceeds the amount the class members are entitled to and that despite Plaintiff's confidence that the issues were certifiable, Defendants had valid defenses. Further, Class Counsel took on the case on a contingency basis taking on a financial risk. Finally, Class Counsel are experienced in complex class actions. Accordingly, the Court concludes that $100,000 in attorneys' fees or 43% of the common fund is reasonable.

Class Counsel also seek costs in the amount of $5,000 to cover filing fees, service fees, research fees, mailings and copying costs even though costs totaled $5,015.98.  (Dkt. No. 61-2, Martin Dec. ¶ 17.)

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Class Counsel are entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case.  *See In re Media Vision Tech. Sec. Litig*., 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citing *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 391-92 (1970)). After a review of the costs to support the request, the Court GRANTS Class Counsel's request for fees of $5,000.

WHEREAS, the Court having considered all papers filed and arguments presented and otherwise being fully informed, **THE COURT HEREBY MAKES THE FOLLOWING DETERMINATIONS AND ORDERS**:

1.     This Order incorporates by reference the definitions in the Settlement Agreement and all terms defined therein shall have the same meaning in this Order as set forth in the Settlement Agreement.

2.     This Court has jurisdiction over the subject matter of this litigation and over all Parties to this litigation, including the Plaintiff and Class Members.

3.     Defendants promulgated the notice required by the Class Action Fairness Act ("CAFA") on January 29, 2020.  CAFA provides that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the requisite notice is provided.  28 U.S.C. § 1715(d).  Here, the requisite time has passed since service of the notice for this Court to issue this Order.

4.     Pursuant to the Preliminary Approval Order, the appointed Settlement Administrator, Simpluris, Inc., mailed a Class Notice to all known Class Members by First Class U.S. Mail.  The Class Notice fairly and adequately informed Class Members of the terms of the proposed Settlement and the benefits available to Class Members thereunder.

More specifically, the Class Notice informed Class Members of the pendency of the Action, of the proposed Settlement, of their right to receive their share of the Settlement, of the scope and effect of the Settlement's Released Claims and Released PAGA Claims, of the preliminary Court approval of the proposed Settlement, of the exclusion and objection timing and procedures, of the date of the Final Approval Hearing and of the right to appear in connection with the Final Approval Hearing.  Class Members had adequate time to use each of these procedures.  The Court finds and determines that this notice procedure afforded adequate protections to Class Members and provides the basis for the Court to make an informed decision regarding approval of the Settlement based on the responses of Class Members.  The Court finds and determines that the Notice provided in the Action was the best notice practicable, which satisfied the requirements of law and due process.

5. In response to the Notice, zero (0) Class Members objected to the Settlement and one (1) Class Member requested exclusion from the Settlement.

6. The Court finds that the Settlement offers significant monetary recovery to all Participating Class Members and finds that such recovery is fair, adequate, and reasonable when balanced against further litigation related to liability and damages issues.  The Court further finds that extensive and costly investigation, formal and informal discovery, research and litigation have been conducted such that Class Counsel and Defense Counsel are able to reasonably evaluate their respective positions at this time.  The Court finds that the proposed Settlement, at this time, will avoid substantial additional costs by all Parties, as well as avoid the risks and delay inherent to further prosecution of the Action.  The Court further finds that the Settlement has been reached as the result of intensive, serious, and non-collusive, arms-length negotiations.  Thus, the Court approves the Settlement set forth in the Settlement Agreement and finds that the Settlement is, in all respects, fair, adequate, and reasonable and directs the Parties to effectuate the Settlement according to its terms.

19cv185-GPC(LL)

7.      The Court hereby orders the Settlement Administrator to distribute the Settlement Payments to Participating Class Members and the PAGA Representative Group in accordance with the provisions of the Settlement.

8.      For purposes of this Order and for this Settlement only, the Court hereby certifies the PAGA Representative Group and the Class, as defined in the Settlement Agreement.

9.      For purposes of this Order and this Settlement only, the Court hereby confirms the appointment of Plaintiff Alan Moreno as the class representative for both the PAGA Representative Group and the Class.  Further, the Court approves a Class Representative Service Award to Plaintiff in the amount of ten thousand dollars ($10,000).  The Court hereby orders the Settlement Administrator to distribute the Class Representative Service Award to Plaintiff in accordance with the provisions of the Settlement.

10.     For purposes of this Order and this Settlement only, the Court hereby confirms the appointment of Alisa A. Martin of Amartin Law and Lindsay David of Brennan & David Law Group, as Class Counsel.  Further, the Court finally approves Class Counsel Fees, as fair and reasonable, in the amount of $100,000.  In addition, the Court finally approves Class Counsel Expenses of $5,000 as fair and reasonable.  The Class Counsel Fees and Class Counsel Expenses shall be for all claims for Class Counsel's attorneys' fees and litigation costs past, present and future incurred in the prosecution and resolution of the Claims and neither Class Counsel, nor any other counsel, shall be permitted to petition the Court, or to accept any payments, for fees and costs relating to the prosecution and resolution of the Claims other than the amounts awarded by the Court for Class Counsel Fees and Class Counsel Expenses.  The Court hereby orders the Settlement Administrator to distribute the Class Counsel Fees and Class Counsel Expenses to Class Counsel in accordance with the provisions of the Settlement.

11.     For purposes of this Order and this Settlement only, the Court hereby finally approves Settlement Administration Costs of six thousand dollars ($6,000) as fair and reasonable.

19cv185-GPC(LL)

12.     As of the Effective Date, every Participating Class Member shall have conclusively released the Released Claims against the Released Parties, including for any injunctive or declaratory relief.   As of the Effective Date, Plaintiff, acting as the representative of the State of California and all allegedly aggrieved employees in the PAGA Representative Group, and every PAGA Representative Group member, shall have conclusively released the Released PAGA Claims against the Released Parties.

13.     Pursuant to the Settlement Agreement, Plaintiff agrees to provide a Complete and General Release and a 1542 Waiver to the Released Parties, as defined and set forth fully in the Settlement Agreement.

14.     After administration of the Settlement has been completed in accordance with the Settlement Agreement, and in no event later than 220 days after the Effective Date, Defendants shall file a report with this Court certifying compliance with the terms of the Settlement.

15.     Neither this Order, the Settlement Agreement, nor any document referred to herein, nor any action taken to carry out the Settlement Agreement is, may be construed as, or may be used as an admission by or against Defendants or any of the other Released Parties of any fault, wrongdoing or liability whatsoever.  Nor is this Order a finding of the validity of any claims in the Action or of any wrongdoing by Defendants or any of the other Released Parties.  The entering into or carrying out of the Settlement Agreement, and any negotiations or proceedings related thereto, shall not in any event be construed as, or deemed to be evidence of, an admission or concession with regard to the denials or defenses by Defendants or any of the other Released Parties and shall not be offered in evidence against Defendants or any of the Released Parties in any action or proceeding in any court, administrative agency, or other tribunal for any purpose whatsoever other than to enforce the provisions of this Order, the Settlement Agreement, or any related agreement or release. Notwithstanding these restrictions, any of the Released Parties may file in the Action or in any other proceeding this Order, the Settlement Agreement, or any other papers and records on file in the Action as evidence of the Settlement and to support a defense of *res judicata*,

collateral estoppel, release, waiver or other theory of claim preclusion, issue preclusion or similar defense as to the Released Claims.

16.     If the Settlement does not become final and effective in accordance with the terms of the Settlement Agreement, resulting in the return and/or retention of the Settlement funds to Defendants consistent with the terms of the Settlement, then this Order and all orders entered in connection herewith, including any order certifying the Class, appointing a class representative or Class Counsel, shall be rendered null and void and shall be vacated.

17.     Final Judgment is hereby entered based on the parties' class action Settlement Agreement.  Without affecting the finality of this Final Approval Order and Final Judgment in any way, this Court hereby retains continuing jurisdiction over the interpretation, implementation and enforcement of the Settlement and all orders and judgments entered in connection therewith.

IT IS SO ORDERED.

Dated:  July 13, 2020

Hon. Gonzalo P. Curiel
United States District Judge

19cv185-GPC(LL)